## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRIS WATKINS, GLOBAL LEASE GROUP INC., PRUDHVI SAMUDRALA, WILLIAM WILSON, KAREN KYUTUKYAN, RAJEEV TALREJA, GIORGIO PETRUZZIELLO, and DREW TALREJA, on behalf of themselves and all others similarly situated,<br><br>                        Plaintiffs,<br>       v.<br><br>ELON R. MUSK, ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003, and EXCESSION LLC,<br><br>                        Defendants. | CASE NO._____ |

## <u>COMPLAINT</u>

Plaintiffs Chris Watkins, Global Lease Group Inc., Prudhvi Samudrala, William Wilson, Karen Kyutukyan, Rajeev Talreja, Giorgio Petruzziello, and Drew Talreja bring this action on behalf of themselves and all others similarly situated against Elon R. Musk, Elon Musk Revocable Trust Dated July 22, 2003, and Excession, LLC.

### I.    BRIEF SUMMARY OF THE CASE

1.    This is a class action brought by purchasers of expensive Tesla vehicles who were swindled out of billions of dollars (at least tens of thousands each) by the world's richest person, Elon Musk, in connection with the advertising and sale of Tesla automobiles, which are high-end electric vehicles ("EV").   The basis of their claims is that Musk falsely represented Tesla driving ranges, instructed that other key facts about vehicle driving ranges be withheld from consumers, took steps to manipulate vehicles' dashboard range meters to

display false driving ranges, and then, to further avoid accountability, diverted consumer complaints about their vehicles' inability to get the displayed range.

2.     Because of the critical importance of range to EV purchasers, this scheme allowed Musk to sell millions of vehicles at higher prices, crush competition, and make hundreds of billions of dollars for himself, his trust, and his family office.

3.     Musk's conduct violated a litany of unfair and deceptive trade practice laws, all of which provide for personal liability because Musk personally formulated, directed, implemented, controlled, and instructed the fraudulent scheme. *See, e.g.*, *S. Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc.*, 183 F. Supp. 3d 197, 222 (D. Mass. 2016) ("[a]n officer of a corporation can be a proper defendant for purposes of" the Massachusetts Unfair Trade Practices Act where he or she has "knowledge of unlawful acts or actual participation in acts made unlawful by" the Act); *see also York Marine, Inc. v. M/V Intrepid*, 2016 WL 5372762, at *11 (D. Me. 2016); *Ne. Lumber Mfrs. Assoc. v. N. States Pallet Co.*, 710 F. Supp. 2d 179, 187–88 (D.N.H. 2010); *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. 5th DCA 2008); *Allen v. V & A Bros.*, 26 A.3d 430, 441 (N.J. 2011); *Fed. Trade Comm'n by James v. Quincy Bioscience Holding*, 389 F. Supp. 3d 211, 220 (S.D.N.Y. 2019).

4.     These facts are not in dispute: Musk admitted to a government regulator, he "engag[ed] in false, exaggerated, and deceptive advertising activities in manufacturing, importing, and selling our electric vehicles."  And because Musk perpetrated this fraud to enrich his revocable trust, both defendants "Elon Musk Revocable Trust dated July 22, 2003," and his family office, Excession, LLC, are liable too.

## II.   INTRODUCTION AND BACKGROUND

5.      Driving range is a critical, material factor in a consumer's decision to buy an EV.  The longer a vehicle can travel, the more attractive it is to potential customers, who pay a premium for longer driving distance.  This is because the main drawbacks to driving an EV are that recharging takes substantially longer than filling up a gas tank, there are substantially fewer EV charging locations than gas stations, and charging stations are entirely lacking in certain areas.  Thus, most consumers won't even consider buying an EV if it can't drive more than 300 miles on a single charge.[1]  But most, if not all, Teslas could not achieve that level of range.

6.      Musk had a fix to this dilemma: Lying.  Year after year, he overstated the ranges that Tesla vehicles can drive by an average of 26% and ordered Tesla to disseminate those lies to potential customers, even describing the false range to his hundreds of millions of Twitter followers as an "actual true-usable range."  This made Tesla vehicles vastly more attractive than they otherwise would have been and opened a market of consumers who otherwise wouldn't have considered buying an EV.

7.      For Musk's scheme to be truly effective he couldn't stop there.  Tesla dashboard range meters had to reflect the misrepresented driving ranges too.  Otherwise, purchasers would demand refunds as soon as they turned on their cars and saw that actual ranges were far less than promised.  "The directive to present the optimistic range estimates" in the cars themselves thus "came from Tesla Chief Executive Elon Musk."  Steve Stecklow and Norihiko Shirouzu, *Tesla Created Secret Team to Suppress Thousands of Driving Range Complaints,*

---

[1]Tom Randall, US Electric Cars Set Record With Almost 300-Mile Average Range, BLOOMBERG (Mar. 9, 2023), https://www.bloomberg.com/news/articles/2023-03-09/average-range-for-us-electric-cars-reached-a-record-291-miles.

REUTERS, July 24, 2023, https://www.reuters.com/investigates/special-report/tesla-batteries-range/. "Elon wanted to show good range numbers when fully charged." *Id.* The reason? It helps sell more cars: "When you buy a car off the lot seeing 350-mile, 400-mile range, it makes you feel good." *Id.*

8. Consequently, Musk took steps to rig the algorithm for the vehicles' dashboard range meters so they would display false drivable ranges. So, for example, the range meter of a fully charged Tesla would indicate 300 miles of drivable range, when in fact the actual range was around 200. In sum, Musk duped unsuspecting consumers into buying vehicles that would not drive nearly as far as claimed and made sure consumers would not readily realize this fact by depriving them of accurate range meters, leaving owners to guess how far they can drive their cars.

9. Musk employed these schemes to enrich himself—and his revocable trust and family office—by hundreds of billions of dollars by making Tesla the preeminent EV manufacturer. Musk did this largely because his CEO compensation package, which is the largest in history, is directly tied to increasing Tesla sales.

10. As a uniquely powerful founding CEO who also owns more of the company than anyone else, Musk used his position of power to manipulate Tesla, including its management, employees, and stakeholders, as part of his fraudulent scheme to enrich himself and the defendant entities that he controls and benefits from. In doing so, Musk acted beyond the scope of his authority at Tesla, breached his fiduciary duties to the company and its public shareholders, and violated consumers' common law and statutory rights to not be deceived when making purchasing decisions. Musk is liable for all this misconduct in his personal capacity.

11.     Musk's fraudulent scheme to overstate driving ranges and manipulate the range meters to personally enrich himself and his personal entities proved wildly successful.   In 2022, Tesla sold 1.31 million EVs—more than half of all EVs sold in the United States.   And four of the six best-selling EVs in the United States are Tesla models.   Through his deceptive conduct, Musk tricked consumers into believing that Tesla models can drive significantly farther than any of its competitors, making Musk billions.   Had customers known the cars could only drive far less than the distances claimed and that the range meters were rigged to state inflated numbers, they either would not have purchased Teslas or would not have paid as much for them, and Musk would have missed out on a fortune.

12.     Tesla has been inundated with customer complaints about vehicle driving ranges, and media reports have cited anonymous whistleblowers alleging that Musk lied about drivable ranges on Tesla models.   Multiple government bodies, including the Department of Justice and the South Korean Fair Trade Commission, have launched investigations into these and other false statements by Musk and Tesla.   In response, in January 2024, Tesla reduced the vehicle ranges advertised on its website, confirming that earlier representations about those ranges were false.

13.     These revelations have marred Tesla's reputation and the market value of Tesla models has plummeted by tens of thousands of dollars, further injuring owners and proving false Musk's promise that the cars would actually increase in value over time.   Because these revelations also caused a significant drop in Tesla vehicle sales, Musk responded by slashing prices on Tesla vehicles, further injuring anyone who previously purchased a Tesla—and confirming that the vehicles he falsely represented were worth substantially less than what consumers paid for them.

### III.   PARTIES

12.     Plaintiff Chris Watkins is a resident of Massachusetts who purchased a Tesla in 2020.

13.     Plaintiff Global Lease Group Inc. is a Massachusetts company that purchased a Tesla in 2022.

14.     Plaintiff Giorgio Petruzziello is a resident of New Hampshire who purchased a Tesla in 2022.

15.     Plaintiff Prudhvi Samudrala is a resident of Illinois who purchased a Tesla in 2021.

16.     Plaintiff William Wilson is a resident of Florida who purchased a Tesla in 2021.

17.     Plaintiff Karen Kyutukyan is a resident of California who purchased a Tesla in 2021.

18.     Plaintiff Rajeev Talreja is a resident of New York who purchased a Tesla in New York in 2020 and in Florida in 2023.

19.     Plaintiff Drew Talreja is a resident of Kentucky who purchased a Tesla in 2022.

20.     Defendant Elon Musk is a Texas citizen who resides in Boca Chica, Texas. Musk is Chief Executive Officer of Tesla and has used the company to defraud consumers, harming Massachusetts, New Hampshire, Maine, Washington, New Jersey, New York, Illinois, Pennsylvania, California, Texas, and Florida residents who purchased Tesla vehicles.

21.     Musk is the sole trustee of, and controls, he "Elon Musk Revocable Trust dated July 22, 2003" (the "Musk Trust").  According to Musk's Schedule 13D filed on February 14, 2024, Musk's 20.5% ownership share of Tesla is held by the Musk Trust.

22.     Excession LLC ("Excession") is Musk's family office.  *Yahoo Finance* indicates that Excession "is responsible for a range of wealth and investment management activities" on behalf of Musk and is "the single office through which most of Musk's money is managed."[2]

23.     Collectively, the Musk Trust and Excession are referred to as the "Musk Personal Entities."

## IV.     JURISDICTION AND VENUE

24.     The Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are more than 100 class members, a member of the Plaintiff Class is a citizen of a different from Defendants' home state, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

25.     Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) because events giving rise to these claims occurred in this District.  Specifically, Musk used Tesla to defraud Massachusetts consumers by lying about vehicle driving ranges and manipulating the range meters on those vehicles.

26.     The Court has specific personal jurisdiction over Musk because Musk's unlawful conduct was directed to and was intended to deceive Massachusetts consumers. Massachusetts is one of the biggest markets for Tesla.  Musk therefore knew that lying about how far Tesla vehicles can drive and manipulating vehicle range meters accordingly would injure Massachusetts consumers and greatly enrich himself and the Musk Personal Entities.

---

[2] Chaitra Anand, *Meet Elon Musk's Secretive Right-Hand Man Jared Birchall*, YAHOO FINANCE (June 2, 2022), https://sg.finance.yahoo.com/news/meet-elon-musks-secretive-right-hand-man-jared-birchall092603446.html (last visited May 9, 2024).

## V.      FACTUAL ALLEGATIONS

### A. Musk Seized Power at Tesla to Manipulate It and Enrich Himself and His Personal Entities

27.      Tesla was founded in 2003. By 2008, Musk became its CEO after allegedly forcing out the two original founders.[3] Musk has been the single largest shareholder of Tesla since he first invested in it during the company's 2004 Series A funding round.  His ownership share has grown since then.  As of 2024, Musk owns and controls approximately 20.5% of the company's stock—far more than anyone else, including massive institutional investors. Vanguard Group is the second-largest shareholder with about 7% of Tesla's shares, followed by BlackRock, which owns about 5.8%.[4]

28.      Musk's power at Tesla is extraordinary.  At least one court, *Tornetta v. Musk*, 310 A.3d 430, 507 (Del. Ch. 2024), has dubbed Musk a "Superstar CEO," a role that shifts the traditional balance of power between CEOs, management, the Board, and stockholders in the CEO's favor—making the independent actors "doubt their own judgment and hesitate to question the decisions of their superstar CEO."[5]  "'The *only* thing'" that holds Musk back from his goals is whether his desire "'is constrained by the laws of physics[.]'"[6]  Musk is known for having a reality "distortion field" that subjugates corporate employees to his will,

---

[3] Lora Kolodny & Erin Black, *Tesla Founders Martin Eberhard & Marc Tarpenning on Elon Musk*, CNBC (Feb. 6, 2021), https://www.cnbc.com/2021/02/06/tesla-founders-martin-eberhard-marc-tarpenning-on-elon-musk.html (last visited May 8, 2024).

[4] Fitri Wulandari, *Who Owns Tesla Stock? 10 Major Tesla Shareholders in 2024*, TECHOPEDIA (last updated May 3, 2024), https://www.techopedia.com/largest-tesla-shareholders (last visited May 8, 2024).

[5] *Id.* (citations omitted).

[6] Richard Waters, *Elon Musk, billionaire tech idealist and space entrepreneur*, FIN. TIMES (Sept. 30, 2016), https://www.ft.com/content/8ca82034-86d0-11e6-bcfc-debbef66f80e (quoting Peter Diamandis, fellow space entrepreneur).

and weakens "mechanisms by which stockholders hold fiduciaries accountable." *Tornetta*, 310 A.3d at 507.

29.     After securing a position of extraordinary power at the company, Musk abused it by manipulating the company as part of a fraudulent scheme to enrich himself and the Musk Personal Entities, breach his fiduciary duties to the company, and breach statutory and common law duties owed to consumers.

30.     Musk is well documented as exceeding his authority for personal gain, including comingling personnel between his different companies without any formal arrangements.  As just one example, a Delaware Chancery Court noted that Musk enlisted approximately fifty Tesla engineers to provide services to Twitter following his acquisition of that company, none of whom were hired, retained, or paid by Twitter for services they provided to Twitter.[7]

31.     Musk sees Tesla, a publicly traded company, as a personal piggy bank providing the monetary means to his ends.  One court has noted that "Musk views his compensation from Tesla as a means of bankrolling" his personal pet projects, like colonizing Mars.[8]  And in emails between Musk and stakeholders at another of Musk's pet projects, OpenAI, Musk suggested that "OpenAI" use "Tesla *as its cash cow*."[9]

---

[7] *Tornetta v. Musk*, 310 A.3d 430, 494 (Del. Ch. 2024).

[8] *Id.* at 452 (citing to excerpts of Musk's trial testimony); *see also id.* ("Musk sees working at Tesla as worthy of his time only if that work generates 'additional economic resources . . . that could . . . be applied to making life multi-planetary.'") (quoting Musk's trial testimony).

[9] *OpenAI & Elon Musk*, OPENAI (March 12, 2024), https://openai.com/index/openai-elon-musk/.  OpenAI is an artificial intelligence company that Musk co-founded and is now suing for breaking from its non-profit mission at the same time he started a competing for-profit AI venture himself.  Michael Dorgan, *Elon Musk Suing OpenAI, Sam Altman for Breaching Not for Profit Mission*, Fox Business (Mar. 1, 2024), https://www.foxbusiness.com/technology/elon-musk-suing-openai-sam-altman-breaching-not-profit-mission).

32.     Musk's compensation package at Tesla is directly linked to the company achieving specific market value milestones.  This arrangement motivates him to maximize Tesla's market value by any means necessary to enrich himself and the Musk Personal Entities, including by overstating the driving ranges of Tesla vehicles and rigging their range meters, as explained in greater detail below.  And the value of Musk's equity in Tesla has seen a dramatic rise coinciding with these fraudulent statements.  Since 2018, the value of his Tesla equity has surged by almost 1,000%, increasing from approximately $11.7 billion to over $120 billion.  Musk's clout within the company affords him the ability to manipulate it as he desires, exceeding the authority of his position as CEO, to better serve his personal goals.

33.     Musk's scheme to enrich himself and the Musk Personal Entities by manipulating Tesla to defraud the public has been tremendously successful.  Musk's compensation package from Tesla has made him the highest paid CEO in U.S. (and world) history, even though his contract does not require Musk to spend any specific amount of time on Tesla specific duties.  Musk's equity in the company, for example, was valued at just under $200 billion in 2022.

**B.  *Musk Lied About Vehicle Ranges***

34.     To enrich himself and the Musk Personal Entities, Musk for years made repeated false claims about the ranges Tesla vehicles could travel.  And, at Musk's direction, Tesla claimed that its Model S Plaid, Model 3 Long Range, Model X Plaid and Model Y Long Range vehicles could travel, respectively, 396, 358, 333, and 330 miles on a single charge.  These false representations were made directly at the point of purchase on Tesla's website, right before consumers clicked "ORDER NOW"—which is the primary if not

exclusive way of purchasing a Tesla vehicle.  In fact, the false range figure is the *first thing* a consumer was presented with at the point of purchase.

35.     The Environmental Protection Agency ("EPA") approves fuel efficiency and driving range figures for all vehicles sold in the United States.  Thus, the Federal Trade Commission ("FTC") requires that when an auto manufacturer advertises the range of a vehicle, it must state that the figure is an "estimate" and identify the EPA "as the source . . . so consumers understand that the estimate is comparable to EPA estimates for competing models." 16 C.F.R. § 259.4(d), (e).  But Musk used Tesla to repeatedly make fraudulent mileage claims without identifying whether the range was an EPA estimate, or even an estimate at all.  As demonstrated by his public statements, described below, Musk ordered Tesla to display the false ranges prominently on the top of Tesla's website because he knew how important driving range is to consumers.  For the Model S, for example, the website stated:



36.    Similarly, for the Model 3, the website read:



37.    And for the Model X, the website read:



38.     Also as demonstrated by his public statements, described below, Musk ordered

Tesla to make other misrepresentations about how far its vehicles could travel.  For example,

in a "Freedom to Travel" map for the Model S, the website read:



39.     The "Freedom to Travel" map implies that the Model S can make a trip from

San Francisco to Los Angeles on a single charge, but that's not possible.  And numerous

Model S owners have discovered as much and have complained about it in online forums:

- "405 miles range is a joke . . . actual range . . . would be 330-340 miles."

- "According to my calculations it's real world range was around 320-330 miles."

- "275 miles for me. Start at 100. Until 50 miles left. Actual distance plus 50 miles
  equals 275 miles or so."

- "[T]he vehicle is rated at 405 miles, but [I] cannot get anywhere close to that
  range.' Yup. Neither can anyone else, because it's not realistic."

- "My calculations show that we got 258 miles with 100% of a full charge (325
  miles with 126%)!"

- "400 miles is an unachievable fantasy to begin with."

40.     And the story is the same for other model owners:

- For the Model 3 standard range, one user complained: "I purchased a model 3. Not a long range nor a dual motor model. Said I should get 273 mi per charge. I seem to get about half that."

- Another Model 3 owner complained: "my real world range is about 203 miles . . . [when it] should have ~322 miles (rated range obviously)."

- And a Model Y long range owner complained: "the actual mileage I got was at best 244 miles, kind of shocking."

- And for the Model X: "My experience so far seems to put real world range at about 22-25 miles per 10% battery so around 220-250 miles on a full charge."

### C. Musk's Direct Participation in and Control Over Tesla's False Advertising

41.     Musk's numerous false claims about Tesla driving ranges, along with his self-proclaimed micromanagement of Tesla, confirm that he manipulated Tesla to fraudulently overstate vehicle ranges and thereby deceive consumers.

42.     For example, Musk lied about the range of Tesla's Model S in a public corporate earnings call on April 29, 2020, where he reported that "the real Model S range is 400 miles."[10]   As Musk knew, that figure was substantially higher than the actual range.

---

[10]Tesla, Inc. (TSLA) Q1 2020 Earnings Call Transcript, https://www.fool.com/earnings/call-transcripts/2020/04/30/tesla-inc-tsla-q1-2020-earnings-call-transcript.aspx.

Indeed, independent third-party testing estimated that Teslas underperform their stated ranges by about 26% on average.[11]

43.     Musk also misrepresented Tesla vehicle ranges at various other presentations to the public.  For example, in 2019, when Musk introduced the Model Y, he falsely claimed the car had "an actual true-usable range of 300 miles," even though he knew the true range was substantially less.  https://youtu.be/w3s1awGu1-M?si=O7eWU5A9x6LG9iD_&t=96:



actual true usable range of 300 miles so

---

[11] Jonathan Elfalan, Cameron Rogers, *Electric Car Range and Consumption: EPA vs. Edmunds*, EDMUNDS (May 22, 2024), https://www.edmunds.com/car-news/electric-car-range-and-consumption-epa-vs-edmunds.html.

44.    Musk likewise claimed that the Model S-Plaid has "almost a 400-mile range," even though he knew the true range was substantially less. https://youtu.be/PNbusPm46Cw?si=YuAhs-UD8sCLpKP6&t=20:



it's got almost a 400 mile range

45.    None of these vehicles can travel as far as Musk claimed, and Musk (who has admitted he is responsible for Tesla's technology, and who himself drives a Tesla Model S) knew and knows that.

46.    Musk has also lied about Tesla's range capabilities on "X" (formerly Twitter), which he purchased in 2022 with the money he made from the scheme described in this

lawsuit.  For example, in July 2020, Musk doubled down on his false claims regarding the

Model Y and stated it would have a range "significantly higher than 300" miles:



47.     In March 2022, after Tesla failed to deliver a 600-mile electric car that Musk

promised years earlier, Musk claimed:



48.     None of Tesla's cars have a "400+ mile range," and Musk knew that.

49.     Musk's manipulation of Tesla to make false statements regarding vehicle ranges is well-documented in media reports:

- "Elon Musk reportedly gave the order himself for the displays in Teslas to present overly optimistic estimates of driving range;"[12]

- "For years, Tesla has earned a reputation for over-estimating its range figures, with the EPA claiming that CEO Elon Musk exaggerated the 400-mile range for the Tesla Model S Long Range back in 2020;"[13]

- "Elon Musk lied about the EPA's Tesla Model S test, agency claims;"[14]

- "'Elon wanted to show good range numbers when fully charged,' the [source] said, adding: 'When you buy a car off the lot seeing 350-mile, 400-mile range, it makes you feel good.'"[15]

- "Tesla's EV Range Is Far From Accurate (And That's on Purpose);"[16]

- "Elon Musk had Tesla overstate its battery range. Tesla then canceled related service appointments."[17]

---

[12] Grace Kay, *Elon Musk Gave Order for Tesla to Display Optimistic Driving Range: Report*, BUS. INSIDER (July 27, 2023), https://www.businessinsider.com/elon-musk-gave-order-tesla-display-optimistic-driving-range-report-2023-7.

[13] Sean Hollister, *Tesla Lowers Range Estimations for Model X, S, Y Amid Mileage Exaggeration Claims*, THE VERGE (Jan. 5, 2024), https://www.theverge.com/2024/1/5/24026367/tesla-lowers-range-estimations-model-x-s-y-mileage-exaggeration.

[14] Sean O'Kane, *Elon Musk Said He Deliberately Took Steps to Mislead the EPA about Tesla Model S Range*, THE VERGE (May 1, 2020), https://www.theverge.com/2020/5/1/21244556/elon-musk-lie-epa-tesla-model-s-range-miles-mistake-door.

[15] Special Report Team, *Tesla's Battery Range: An Investigation*, REUTERS (July 27, 2023), https://www.reuters.com/investigates/special-report/tesla-batteries-range/.

[16] Ian Kreitzberg, *Tesla's EV Range: Far From Accurate on Purpose*, THE STREET (July 27, 2023), https://www.thestreet.com/electric-vehicles/teslas-ev-range-far-from-accurate-on-purpose.

[17] Chris Taylor, Tesla, *Elon Musk Inflated Driving Range: Report*, MASHABLE (July 27, 2023), https://mashable.com/article/tesla-elon-musk-inflated-driving-range-report.

- "Tesla programmers rigged the cars' range-estimating software to exaggerate how far they could go without running out of battery and then, when charge on the battery fell below 50%, readjust to a more realistic projection, one Tesla employee told Reuters—an idea that came directly from CEO Elon Musk himself."[18]

- "A source that spoke to Reuters for the piece suggests that this issue was in part the result of an algorithm intentionally designed to give 'rosy' projections, adding that the instruction to build in misleadingly optimistic estimates came directly from Tesla executive and mascot Elon Musk."[19]

50.    Not only did Musk lie about vehicle driving ranges, he deceived consumers by purposefully hiding the fact that temperatures—including normal temperatures that exist everywhere in the United States—dramatically reduce those driving ranges.   And he manipulated Tesla to do the same.

51.    Musk's micromanagement of Tesla is a matter of public record, and employees have reported that Musk is involved in the most minute decisions at the company.[20]    For

---

[18] Mary Roeloffs, *Tesla Exaggerated Its Cars' Driving Range and Canceled Service Appointments If Drivers Complained, Report Says*, FORBES (July 27, 2023), https://www.forbes.com/sites/maryroeloffs/2023/07/27/tesla-exaggerated-its-cars-driving-range-and-canceled-service-appointments-if-drivers-complained-report-says/?sh=6a0af327d9c4.

[19] Fred Smith, *Tesla's In-Car Range Estimates Have Reportedly Been Overstated for Years*, ROAD & TRACK (July 27, 2023), https://www.roadandtrack.com/news/a44664189/teslas-in-car-range-estimates-have-reportedly-been-overstated-for-years/.

[20] Lora Kolodny, *Elon Musk's extreme micro-management has wasted time and money at tesla, insiders say*, CNBC (Oct. 19, 2018), https://www.cnbc.com/2018/10/19/cnbcs-lora-kolodny-elon-musks-extreme-micro-management-has-wasted-time-and-money-at-tesla-insiders-say.html.

example, Musk has bragged about sleeping at Tesla factories for extended periods of time. Musk has also professed knowledge of minor details concerning the testing of Tesla driving ranges, like the impact of someone leaving "the car door opened and the keys in the car."[21]

52.     Musk knew that his statements and Tesla's representations about driving ranges were false, and he directed employees to hide this information from consumers.  As explained below, he ordered Tesla to have the range meter inflate vehicle ranges.  Musk also manipulated Tesla to hide from consumers the fact that temperature can dramatically reduce the car's range capabilities.[22]  This is in sharp contrast to some other EV carmakers, who state at the point of purchase the impact that cold weather has on range.  For example, Porsche, like Tesla, displays EV range as the first feature on its website.  But unlike Tesla, Porsche includes a double asterisk next to range ("**") that links to an entirely separate page of warnings about range, including the impact of cold weather.

53.     Thus, there is no question that Musk knew Tesla's cars could not drive as far as he and the company claimed.  Yet, Musk continued to make false mileage claims, and ordered Tesla to make false mileage claims, so the company would sell more cars and he would reap the profits.

### D. Musk Manipulated Tesla to Use the Range Meter to Lie About Vehicle Driving Ranges.

54.     Musk's fraud would not have worked if it was limited to lying about vehicle driving ranges at the point of purchase.  Owners would have immediately discovered the lies, and demanded refunds, as soon as they turned on their new cars and saw the actual ranges

---

[21] *See* Tesla, *supra* note 2.

[22] In sharp contrast, most EV automakers have strong disclaimers, or even whole web pages, dedicated to explaining how battery range can be affected by multiple factors, including weather. See https://www.audiusa.com/us/web/en/ev-hub/range.html (explaining Audi's range capabilities and factors that could hinder it).

displayed on the range meter.  To stop that from happening, Musk ordered Tesla's engineers to manipulate the software-based range meter on Tesla vehicles to falsely state the ranges of the vehicles.

55.     Among other things, the range meter purports to inform drivers approximately how far their vehicles can travel on the remaining battery charge.  For example, the image below shows a Tesla Model S range meter claiming a range of 385 miles:



56.     The range meters in Teslas state falsely inflated ranges.  "The directive to present the optimistic range estimates came from Tesla Chief Executive Elon Musk."[23]  As

---

[23] Special Report Team, *Tesla's Battery Range: An Investigation*, REUTERS (July 27, 2023), https://www.reuters.com/investigates/special-report/tesla-batteries-range/.

insiders have confirmed, "Elon wanted to show good range numbers when fully charged" to deceive customers into buying Teslas for more than they were worth.[24]

57.    Again, numerous Tesla owners have posted online complaints about the inaccurate range meters.  For example:

- One Model S owner said: "When fully charged it [the range meter] says 405 miles yet my real world range is 280 miles."

- A Model 3 owner similarly reported: "The route I took is 7.1 miles, but according to the car, I used 11 miles of battery range."

- And a Model Y owner reported: "I drove about 107.1 miles, but lost 133 in range."

58.    Moreover, the range meter only begins to provide an accurate reading when the battery charge drops below 50%, presumably to prevent motorists from becoming stranded, which would cause more scrutiny of the false range claims.  Thus, the inaccurate range meter is not the result of technical limitations.  Tesla—which also claims to have near fully autonomous vehicles—of course had the ability to provide accurate range readings for full battery charges.  But Musk ordered the company to provide false readings in order to deceive customers about this critical aspect of the vehicle's performance.

59.    As a result of Musk's manipulation, Tesla owners were deprived of basic, critical information about the capabilities of their vehicles, all because Musk wanted to sell more vehicles and manipulate the market.

---

[24] *Id.*

### E.  The Diversion Team

60.  Once customers realized that their cars weren't performing as Musk claimed, Tesla was inundated with service requests complaining about the cars' mileage.  But Musk knew that servicing the cars would be pointless because the vehicles were working as designed—to provide lower driving ranges than advertised.  So to avoid having to waste resources and having the lies exposed, Musk implemented a "Diversion Team."

61.  The Diversion Team was designed to perpetuate Musk's fraud by preventing customers from having their vehicles serviced for range-related issues.  For example, when a customer scheduled a service appointment to address the vehicle's driving range, a member of the Diversion Team would conduct a "remote diagnostic" and, regardless of the results, tell the customer that the vehicle was fine and cancel the appointment.  The Diversion Team further told customers that the stated range was a "prediction" rather than an actual measurement and falsely suggested that the range issues were the result of the batteries naturally degrading over time.  The Diversion Team did not tell the truth: the ranges that Tesla's vehicles could travel were exaggerated (at Musk's direction), and the range meter deliberately misstated driving ranges (also at Musk's direction).  Indeed, the whole point of the "Diversion Team" was to divert attention from Musk's deception.

### F.  Numerous Sources (Including Musk's Own Statements) Confirm That Musk Lied About Driving Range.

62.  Musk's deception was enormously successful.  In a highly competitive industry, Tesla became the market leader.  That was only possible through Musk's campaign of deception.  Most consumers won't consider buying an EV unless they can get at least 300

miles out of a single charge, as Tesla's own market data showed.[25]   So if Musk had been honest about vehicle ranges, he would have made billions less.

63.     Multiple sources have begun to confirm the extent of Musk's lies.  In January 2023, the Society of Automotive Engineers released a report after testing several Tesla models. The report found Tesla's driving ranges are overstated by an average of **26%**.  Thus, based on Tesla's range misrepresentations, a Model S Plaid owner could reasonably decide to drive from San Francisco to Los Angeles on a full charge, but would be left stranded approximately 85 miles short of the destination.

64.     Then, on July 27, 2023, Reuters published a special report describing Musk's practice of intentionally inflating the range of Tesla vehicles.[26]

65.     Musk himself has acknowledged the fraud.  After the South Korean Fair Trade Commission (KFTC) fined Tesla over $2.2 million for overstating the range on its vehicles, along with lying about the performance of its Superchargers (stations that the company installed for owners to pay to recharge their car "up to 200 miles of range in just 15 minutes"), Musk said in a June 19, 2023, posting on Tesla's Korean website: "From August 2019 to December 2022, we violated the 'Fair Labeling and Advertising Act' by engaging in false, exaggerated, and deceptive advertising activities in manufacturing, importing, and selling our electric vehicles.  We received a corrective order from the KFTC."[27]

---

[25] Randall, *supra* note 1.

[26] Steve Stecklow and Norihiko Shirouzu, *Tesla Created Secret Team to Suppress Thousands of Driving Range Complaints,* REUTERS, July 24, 2023, https://www.reuters.com/investigates/special-report/tesla-batteries-range/.

[27] Jasmine Choi, Tesla Announces 'Exaggerated Advertising' Rectification Measures after 6 Months, BusinessKorea (June 20, 2023), https://www.businesskorea.co.kr/news/article View.html?idxno=116738.

66.     Additionally, the EPA is currently investigating Tesla and has cut the official range estimates for the Model S, Model Y and Model X. The Department of Justice is likewise investigating Tesla's claims about driving ranges. Tesla has acknowledged that the DOJ's investigation may have a "material adverse impact on our business."

67.     As a result of these and other events, in January 2024, Tesla adjusted the advertised ranges for most of its vehicles—for example, reducing the Model Y Long Range by 20 miles, the Model S Plaid by 37 miles, and the Model X Plaid by 7 miles.[28]   Tesla separately lowered the Model 3 Long Range in November 2023 from 358 to 333 miles.  Tesla gave no explanation for doing so, because the only explanation was that Musk and the company had previously lied about the vehicles' true ranges.

68.     Tesla likewise reduced the stated ranges in the range meters for many vehicles via a software update, again without explanation.

69.     Even now, however, Musk continues to manipulate Tesla to overstate vehicle ranges. Both the advertised ranges and the range meters continue to be deceptively inflated even though reduced from prior levels.

70.     The publicity of Musk's misconduct has damaged the market value of Tesla vehicles.  Prices of Tesla vehicles fell by more than 30% on certain models, further injuring consumers who purchased misrepresented vehicles before the price reductions.

71.     Musk previously promised that "if you buy a Tesla today, I believe you're buying       an       appreciating       asset,       not       a       depreciating       asset."

---

[28] Jess Weatherbed, *Tesla lowers Model Y, S, and X range estimations following exaggeration complaints*, https://www.theverge.com/2024/1/5/24026367/tesla-lowers-range-estimations -model-x-s-y-mileage-exaggeration

https://www.youtube.com/watch?v=dEv99vxKjVI.   But the drastic drop in Tesla vehicle

prices, due to Musk's fraudulent practices, shows that this statement was unequivocally false.

### G. Plaintiffs' Experiences

72.   **Chris Watkins**: Chris is a college soccer coach who purchased a Tesla in 2020

in the state of Washington and now resides in Massachusetts.   His vehicle's driving range is

far less than its advertised range and far less than the range displayed on the range meter when

fully charged.   Had Chris known the car's range was exaggerated and that Musk manipulated

the range meter to show a false range, he would not have purchased the vehicle or would have

paid considerably less.

73.   **Global Lease Group Inc.** is a Massachusetts company owned by

Massachusetts resident Sham Sahni.  Global Lease Group purchased a Tesla in 2022 in

Massachusetts.   The vehicle's driving range is far less than its advertised range and far less

than the range displayed on the range meter when fully charged.   Had Global Lease Group

known the car's range was exaggerated and that Musk manipulated the range meter to show

a false range, it would not have purchased the vehicle or would have paid considerably less.

74.   **Giorgio Petruzziello**: Giorgio purchased a Tesla in 2022 in New

Hampshire.   His vehicle's driving range is far less than its advertised range and far less than

the range displayed on the range meter when fully charged.   Had Giorgio known the car's

range was exaggerated and that Musk manipulated the range meter to show a false range, he

would not have purchased the vehicle or would have paid considerably less.

75.   **Prudhvi Samudrala**: Prudhvi is a software engineer who purchased a Tesla in

2021.   His vehicle's driving range is far less than its advertised range and far less than the

range displayed on the range meter when fully charged.   Had Prudhvi known the car's range

was exaggerated and that Musk manipulated the range meter to show a false range, he would not have purchased the vehicle or would have paid considerably less.

76.   **Drew Talreja**: Drew purchased a Tesla in 2022 while he was a Kentucky resident.  His vehicle's driving range is far less than its advertised range and far less than the range displayed on the range meter when fully charged.   Had Drew known the car's range was exaggerated and that Musk manipulated the range meter to show a false range, he would not have purchased the vehicle or would have paid considerably less.

77.   **William Wilson:** William is the chief executive of a small business who purchased a Tesla in 2021.   His vehicle's driving range is far less than its advertised range and far less than the range displayed on the range meter when fully charged.   Had William known the car's range was exaggerated and that Musk manipulated the range meter to show a false range, he would not have purchased the vehicle or would have paid considerably less.

78.   **Karen Kyutukyan**: Karen, who goes by Gary, is a sales professional who purchased a Tesla in 2021. His vehicle's driving range is far less than its advertised range and far less than the range displayed on the range meter when fully charged.   Had Karen known the car's range was exaggerated and that Musk manipulated the range meter to show a false range, he would not have purchased the vehicle or would have paid considerably less.

79.   **Rajeev Talreja**: Rajeev purchased a Tesla in New York in 2020 and another in Florida in 2023.   He purchased one in New York and another in Florida.    His vehicles' driving range is far less than their advertised ranges and far less than the ranges displayed on the range meters when fully charged.   Had Rajeev known the cars' range was exaggerated and that Musk manipulated the range meters to show a false range, he would not have purchased the vehicle or would have paid considerably less.

## VI.    CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

81.     Plaintiffs seek to represent a class of all persons in the United States who purchased or leased a Tesla vehicle within the applicable statutes of limitations preceding the filing of this action ("Nationwide Class").

82.     Plaintiffs also seek to represent classes of all persons in the states of Massachusetts, New Hampshire, Maine, New Jersey, California, New York, Pennsylvania, Florida, Texas, Illinois, Washington who purchased or leased a Tesla vehicle within the applicable statutes of limitations preceding the filing of this action ("State Subclasses" and collectively with Nationwide Class, the "Class").

83.     Excluded from the Class are (i) Elon Musk; (ii) any entity in which Elon Musk has a controlling interest; (iii) the judicial officer(s) to whom this action is assigned; and (iv) the immediate family members, legal representatives, heirs, successors, or assigns of any party excluded under (i)–(iii).

84.      Plaintiffs reserve the right to modify or amend the definition of the proposed Class and to add additional subclasses before this Court determines whether certification is appropriate.

85.     This action satisfies the numerosity, commonality, typicality, predominance, adequacy, and superiority requirements of Rule 23.

86.     As to numerosity: The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands

of members or more, the identities of whom can be readily identified by transaction records of vehicle purchases and leases, which are not currently available to Plaintiffs.

87.     As to commonality: The questions here are ones of common or general interest such that there is a well-defined community of interest among Class members.  These questions predominate over questions that may affect only individual Class members because Musk acted or failed to act on grounds generally applicable to the Class.  Such common legal or factual questions include, but are not limited to: (i) whether Musk engaged in the conduct alleged herein (*e.g.*, directly formulating and participating in a scheme to exaggerate the ranges that Tesla vehicles could travel on a single charge and to inflate the drivable ranges displayed the range meter); (ii) whether Musk's conduct was unfair and/or deceptive, and (iii) whether Musk's conduct caused Class members harm.

88.     As to typicality: Plaintiffs' claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Musk, as described herein.  The evidence and the legal theories regarding Musk's alleged wrongful conduct committed against Plaintiffs and absent Class members are substantially the same because the challenged practices are uniform for Plaintiffs and the Class members.  For example, Musk directed his engineering team to manipulate the range meter on all Tesla vehicles.  Accordingly, in pursuing his own interest in litigating the claims, Plaintiffs will also serve the interests of the Class.

89.     As to predominance: This matter is properly maintained as a class action under Rule 23 because the common questions of law and fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class members.

90.     As to adequacy: Plaintiffs are adequate representatives of the Class pursuant to Rule 23 in that he is a Tesla owner and has suffered damages because of Musk's deceptive practices.  Additionally, (i) Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated; (ii) Plaintiffs have retained competent counsel experienced in litigating class actions; (iii) there is no conflict of interest between Plaintiffs and the unnamed members of the Class; (iv) Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and (v) Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and address the legal issues associated with this type of litigation.

91.     As to superiority: Class litigation is an appropriate method for the fair and efficient adjudication of the claims involved.  Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit the numerous Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require.  Class action treatment will also permit the adjudication of relatively modest claims by certain Class members, who could not individually afford to litigate a complex claim against a wealthy defendant.

92.     For these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I
## VIOLATIONS OF THE MASSACHUSETTS
## CONSUMER PROTECTION ACT
### Mass. Gen. Laws ch. 93A, § 11

93.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

94.     Plaintiff Global Lease Group, Inc. and the Massachusetts Business Consumer Class members bring this cause of action under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("MCPA").  The MCPA prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

95.     Plaintiff Global Lease Group, Inc., the Massachusetts Business Consumer Class members, and Musk are "persons" as defined by the MCPA.  Mass. Gen. Laws ch. 93A, § 1, and at all relevant times were engaged in trade or commerce.

96.     At all relevant times, Musk and the Musk Personal Entities were engaged in trade or commerce.

97.     As set forth above, Musk engaged in unfair and deceptive acts in violation of the MCPA, including by fraudulently misleading Plaintiff Global Lease Group, Inc. and the Massachusetts Business Consumer Class members.  Specifically, Musk violated the MCPA, including by:

- Formulating and implementing a scheme to misrepresent the ranges that Tesla vehicles can travel on a single charge;

- Formulating and implementing a scheme to omit disclosing to customers that normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles; and

- Formulating and implementing a scheme for Tesla vehicle range meters to misrepresent driving ranges.

98.     Musk's misrepresentations and omissions were material because they impact central functions of Tesla vehicles, such as the ranges they can travel on a single charge and the operation of the vehicles' range meters.

99.     Musk was under a duty to inform Plaintiff Global Lease Group, Inc. and the Massachusetts Business Consumer Class members about the true nature and quality of vehicle ranges.

100.    Exaggerating the range, failing to disclose that the range can be reduced by normal temperature fluctuations, and manipulating the range meters to display a false range were deceptive and misleading and would influence a reasonable business consumer's decision to purchase a Tesla.

101.    An objectively reasonable person would have been deceived by the above-described acts and omissions. Plaintiff Global Lease Group, Inc. and the Massachusetts Business Consumer Class members suffered financial damages as a result of said unlawful conduct.  Plaintiff Global Lease Group, Inc. and the Massachusetts Business Consumer Class members were further injured when some of the unlawful practices were uncovered, which drove down the values of Tesla vehicles.

102.    Had Plaintiff Global Lease Group, Inc. and the Massachusetts Business Consumer Class members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated, that normal temperature fluctuations can dramatically reduce the ranges of those vehicles, and that the range meter displayed false ranges, they would have taken steps to avoid damages by not purchasing the vehicles or paying less for the vehicles.

103.    As a direct and proximate result of Musk's violations of the MCPA, Plaintiff Global Lease Group, Inc. and the Massachusetts Business Consumer Class members have suffered injury-in-fact and/or actual damage.

104.    Musk's unfair and deceptive practices towards Plaintiff Global Lease Group, Inc. and the Massachusetts Business Consumer Class members occurred primarily and substantially within the Commonwealth of Massachusetts.

105.    Because Musk's deceptive acts were willful or knowing violations of the MCPA, or should Musk refuse to grant relief upon demand in bad faith with knowledge that the practices complained of violate Section 2 of the MCPA, Plaintiff Global Lease Group, Inc. and the Massachusetts Business Consumer Class members are entitled to up to three but not less than two times actual damages or twenty-five dollars, whichever is greater. Alternatively, the Massachusetts Class Members are entitled to up to actual damages or twenty-five dollars, whichever is greater.

106.    The Massachusetts Class Members seek actual damages, statutory damages, and attorneys' fees and costs and all other relief allowed under Massachusetts law.

## COUNT II
## VIOLATIONS OF THE MASSACHUSETTS
## CONSUMER PROTECTION ACT
### Mass. Gen. Laws ch. 93A, § 9

107.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

108.    This action is brought under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("MCPA").  The MCPA prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

109.    The Massachusetts Class Members and Musk are "persons" as defined by the MCPA.  Mass. Gen. Laws ch. 93A, § 1.

110.    At all relevant times, Musk and the Musk Personal Entities were engaged in trade or commerce.

111.   As set forth above, Musk engaged in unfair and deceptive acts in violation of the MCPA, including by fraudulently misleading the Massachusetts Class members. Specifically, Musk violated the MCPA, including by:

- Formulating and implementing a scheme to misrepresent the ranges that Tesla vehicles can travel on a single charge;

- Formulating and implementing a scheme to omit disclosing to customers that normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles; and

- Formulating and implementing a scheme for Tesla vehicle range meters to misrepresent driving ranges.

112.   Musk's misconduct was material because it impacted central functions of Tesla vehicles such as the ranges they can travel on a single charge and the operation of the vehicles' range meters.

113.   Musk was under a duty to inform the Massachusetts Class members about the true nature and quality of vehicle ranges.

114.   Exaggerating vehicle ranges, failing to disclose that the ranges were affected by normal temperature fluctuations, and manipulating the range meters to display  false ranges were deceptive and misleading and would influence a reasonable consumer's decision to purchase a Tesla.

115.   An objectively reasonable person would have been deceived by the above-described acts and omissions. The Massachusetts Class members suffered financial damages as a result of said unlawful conduct.  The Massachusetts Class members were further injured

when some of the unlawful practices were uncovered, which drove down the values of Tesla vehicles.

116.    Had the Massachusetts Class members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated, that normal temperature fluctuations can dramatically reduce the ranges of those vehicles, and that the range meters displayed false ranges, they would have taken steps to avoid damages by not purchasing the vehicles or paying less for the vehicles.

117.    As a direct and proximate result of Musk's violations of the MCPA, the Massachusetts Class members have suffered injury-in-fact and/or actual damage.

118.    Because Musk's deceptive acts were willful or knowing violations of the MCPA, or should Musk refuse to grant relief upon demand in bad faith with knowledge that the practices complained of violate Section 2 of the MCPA, the Massachusetts Class Members are entitled to up to three but not less than two times actual damages or twenty-five dollars, whichever is greater.  Alternatively, the Massachusetts Class Members are entitled to up to actual damages or twenty-five dollars, whichever is greater.

119.    The Massachusetts Class Members seek actual damages, statutory damages, and attorneys' fees and costs and all other relief allowed under Massachusetts law.

**COUNT III**
**VIOLATIONS OF THE NEW HAMPSHIRE**
**CONSUMER PROTECTION ACT**
**N.H. Rev. Stat. §§ 358-A:1.** *et seq.*

120.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

121.    Plaintiff Giorgio Petruzziello brings this cause of action on behalf of members of the New Hampshire Class pursuant to the New Hampshire Consumer Protection Act ("NHCPA"), N.H. Rev. Stat. § 358-A:1, *et seq.*

122.    Plaintiff Giorgio Petruzziello, the New Hampshire Class, and Musk are "person[s]" under the NHCPA.  N.H. Rev. Stat. § 358-A:1.

123.    At all relevant times, Musk and the Musk Personal Entities were engaged in trade or commerce.  N.H. Rev. Stat. § 358-A:1.

124.    The NHCPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: … (V) [r]epresenting that goods or services have … characteristics, … uses, benefits or quantities that they do not have;" "(VII) [r]epresenting that goods or services are of a particular standard, quality, or grade, … if they are of another;" and "(IX) [a]dvertising goods or services with intent not to sell them as advertised."  N.H. Rev. Stat. § 358-A:2.

125.    Musk violated the NHCPA by engaging in the conduct described above, which constitutes unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.  Specifically, Musk violated the NHCPA by:

- Formulating and implementing a scheme to misrepresent the ranges that Tesla vehicles can travel on a single charge;

- Formulating and implementing a scheme to omit disclosing to customers that normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles; and

- Formulating and implementing a scheme for Tesla vehicle range meters to misrepresent driving ranges.

126.    Musk's misconduct was material because it impacted central functions of Tesla vehicles such as the ranges they can travel on a single charge and the operation of the vehicles' range meters.

127.    Musk was under a duty to inform the New Hampshire Class members about the true nature and quality of vehicle ranges.

128.    Exaggerating vehicle ranges, failing to disclose that the ranges were affected by normal temperature fluctuations, and manipulating the range meters to display  false ranges were deceptive and misleading and would influence a reasonable consumer's decision to purchase a Tesla.

129.    An objectively reasonable person would have been deceived by the above-described acts and omissions. Plaintiff Giorgio Petruzziello and the New Hampshire Class members suffered financial damages as a result of said unlawful conduct.  Plaintiff Giorgio Petruzziello and the New Hampshire Class Members were further injured when some of the unlawful practices were uncovered, which drove down the values of Tesla vehicles.

130.    Had Plaintiff Giorgio Petruzziello and the New Hampshire Class members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated, that normal temperature fluctuations dramatically reduce the ranges of those vehicles, and that the range meter displayed false ranges, they would have taken steps to avoid damages by not purchasing the vehicles or paying less for the vehicles.

131.    As a direct and proximate result of Musk's violations of the NHCPA, Plaintiff Giorgio Petruzziello and the New Hampshire Class members have been injured in an amount

to be proven at trial.  Alternatively, Plaintiff Giorgio Petruzziello and the New Hampshire Class members are entitled to a refund for the amount they paid for their Tesla vehicles.

132.    Plaintiff Giorgio Petruzziello, on behalf of himself and the New Hampshire Class members, seeks actual damages or $1,000, whichever is greater, treble damages, punitive damages, a refund, and attorneys' fees and costs and all other relief allowed under New Hampshire law. N.H. Rev. Stat. § 358-A:10.

**COUNT VI**
**VIOLATIONS OF THE MAINE**
**UNFAIR TRADE PRACTICES ACT**
**5   M.R.S.A § 205-A** *et seq.*

133.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

134.    This action is brought under the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.* ("MUTPA").

135.    The Maine Class members are persons who purchased Teslas primarily for personal, family, or household purposes within the meaning of Section 213(1) of MUTPA.

136.    At all relevant times, Musk and the Musk Personal Entities were engaged in trade or commerce as defined by Section 206(3) of the MUTPA.

137.    The MUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 5 M.R.S.A. § 207.

138.    Musk engaged in unlawful trade practices including, inter alia: (1) representing that Teslas have characteristics, benefits, and qualities that it does not have; (2) representing that Teslas are of a particular standard and quality when they are not; (3) advertising Teslas with an intent not to sell them as advertised; and (4) otherwise engaging in conduct likely to deceive.

139.    As set forth above, Musk engaged in unfair and deceptive acts in violation of the MUTPA, including by fraudulently misleading the Maine Class members.  Specifically, Musk violated the MUTPA, including by:

- Formulating and implementing a scheme to  misrepresent the ranges that Tesla vehicles can travel on a single charge;

- Formulating and implementing a scheme to omit disclosing to customers that normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles; and

- Formulating and implementing a scheme for Tesla vehicle range meters to misrepresent driving ranges.

140.    Musk's misconduct was material because it impacted central functions of Tesla vehicles such as the ranges they can travel on a single charge and the operation of the vehicles' range meters.

141.    Musk was under a duty to inform the Maine Class members about the true nature and quality of vehicle ranges.

142.    Exaggerating vehicle ranges, failing to disclose that the ranges were affected by normal temperature fluctuations, and manipulating the range meters to display false ranges were deceptive and misleading and would influence a reasonable consumer's decision to purchase a Tesla.

143.    An objectively reasonable person would have been deceived by the above-described acts and omissions. The Maine Class members suffered financial damages as a result of said unlawful conduct. The Maine Class members were further injured when some of the unlawful practices were uncovered, which drove down the values of Tesla vehicles.

144.    Had the Maine Class members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated, that normal temperature fluctuations dramatically reduce the ranges of those vehicles, and that the range meter displayed false ranges, they would have taken steps to avoid damages by not purchasing the vehicles or paying less for the vehicles.

145.    As a direct and proximate result of Musk's violations of the MUTPA, the Maine Class members have suffered injury-in-fact and/or actual damage.

146.    The unfair and deceptive acts and practices complained of herein were not reasonably avoidable by consumers.

147.    Musk's acts and practices, as outlined above, were willful and knowing.

148.    The Maine Class is entitled to recover actual damages in an amount to be established at trial, restitution, restitution by way of full refunds of the purchase price for all their purchases of Teslas and any other equitable relief, which the Court determines to be necessary and proper pursuant to Section 213(1) of the MUTPA.

149.    Furthermore, in accordance with Section 213(2) of the MUTPA, Musk is liable to the Maine Class for reasonable attorneys' fees and costs incurred in connection with this action.

150.    The Maine Class Members seek actual damages, statutory damages, and attorneys' fees and costs and all other relief allowed under Maine law.

**COUNT V**
**VIOLATIONS OF THE FLORIDA DECEPTIVE**
**AND UNFAIR TRADE PRACTICE ACT**
**Fla. Stat. § 501.201, et seq.**

151.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

152.    Plaintiffs William Wilson, Rajeev Talreja, and the Florida Class Members bring this cause of action pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* (the "FDUTPA").  The stated purpose of FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  *Id.* § 501.202(2).

153.    Plaintiffs William Wilson, Rajeev Talreja, and the Florida Class Members are "consumers" and the transactions at issue in this Complaint constitute "trade or commerce" as defined by FDUTPA.  *See id.* § 501.203(7)-(8).

154.    At all relevant times, Musk and the Musk Personal Entities were engaged in trade or commerce.

155.    FDUTPA declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  *Id.* § 501.204(1).

156.    Musk violated FDUTPA by engaging in the conduct described above, which constitutes unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

157.    In violation of FDUTPA, Musk employed fraud, deception, false promise, and the knowing concealment, suppression, or omission of material facts in the sale and advertisement of Tesla vehicles in the State of Florida.  Specifically, Musk violated FDUTPA, including by:

- Formulating and implementing a scheme to  misrepresent the ranges that Tesla vehicles can travel on a single charge;

- Formulating and implementing a scheme to omit disclosing to customers that normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles; and

- Formulating and implementing a scheme for Tesla vehicle range meters to misrepresent driving ranges.

158. Musk's misconduct was material because it impacted central functions of Tesla vehicles such as the ranges they can travel on a single charge and the operation of the vehicles' range meters.

159. Musk was under a duty to inform the Florida Class members about the true nature and quality of vehicle ranges.

160. Exaggerating vehicle ranges, failing to disclose that the ranges were affected by normal temperature fluctuations, and manipulating the range meters to display false ranges were deceptive and misleading and would influence a reasonable consumer's decision to purchase a Tesla.

161. An objectively reasonable person would have been deceived by the above-described acts and omissions. Plaintiffs William Wilson, Rajeev Talreja, and the Florida Class Members suffered financial damages as a result of said unlawful conduct. Plaintiffs William Wilson, Rajeev Talreja, and the Florida Class Members were further injured when some of the unlawful practices were uncovered, which drove down the values of Tesla vehicles.

162. Had Plaintiffs William Wilson, Rajeev Talreja, and the Florida Class Members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated, that normal temperature fluctuations dramatically reduce the ranges of those vehicles, and that

the range meter displayed false ranges, they would have taken steps to avoid damages by not purchasing the vehicles or paying less for the vehicles.

163.     As a direct and proximate result of Musk's violations of the FDUTPA, Plaintiffs William Wilson, Rajeev Talreja, and the Florida Class Members have been injured in an amount to be proven at trial.

164.     Plaintiffs William Wilson and Rajeev Talreja, on behalf of themselves and the Florida Class Members, seek actual damages, punitive damages, and attorneys' fees and costs and all other relief allowed under Florida law.

**COUNT VI**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT**
**815 ILCS § 505/1**

165.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

166.     Plaintiff Prudhvi Samudrala and the Illinois Class Members bring this cause of action pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 ("ICFA").

167.     The ICFA prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce, including among others, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 Ill. Comp. Stat. § 505/2.  It further prohibits suppliers from representing that their goods are of a particular quality or grade that they are not.

168.     Plaintiff Prudhvi Samudrala and the Illinois Class Members are "consumers" as defined by 815 Ill. Comp. Stat. § 505/1(e).

169.   Musk and the Musk Personal Entities are "person[s]" as defined in 815 Ill. Comp. Stat. § 505/1(c).

170.   At all relevant times, Musk and the Musk Personal Entities were engaged in trade or commerce.

171.   Tesla vehicles are "merchandise" as defined in 815 Ill. Comp. Stat. S 505/1(b).

172.   Musk engaged in unfair or deceptive acts or practices as defined in 815 Ill. Comp. Stat. § 505/2, including by:

- Formulating and implementing a scheme to misrepresent the ranges that Tesla vehicles can travel on a single charge;

- Formulating and implementing a scheme to omit disclosing to customers that normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles; and

- Formulating and implementing a scheme for Tesla vehicle range meters to misrepresent driving ranges.

173.   Musk's misconduct was material because it impacted central functions of Tesla vehicles such as the ranges they can travel on a single charge and the operation of the vehicles' range meters.

174.   Musk was under a duty to Plaintiff Prudhvi Samudrala and the Illinois Class members about the true nature and quality of vehicle ranges.

175.   Exaggerating vehicle ranges, failing to disclose that the ranges were affected by normal temperature fluctuations, and manipulating the range meters to display false ranges were deceptive and misleading and would influence a reasonable consumer's decision to purchase a Tesla.

176. An objectively reasonable person would have been deceived by the above-described acts and omissions. Plaintiff Prudhvi Samudrala and the Illinois Class Members suffered financial damages as a result of said unlawful conduct. Plaintiff Prudhvi Samudrala and the Illinois Class Members were further injured when some of the unlawful practices were uncovered, which drove down the values of Tesla vehicles.

177. Had Plaintiff Prudhvi Samudrala and the Illinois Class Members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated, that normal temperature fluctuations dramatically reduce the ranges of those vehicles, and that the range meter displayed false ranges, they would have taken steps to avoid damages by not purchasing the vehicles or paying less for the vehicles.

178. As a direct and proximate result of Musk's violations of the ICFA, Plaintiff Prudhvi Samudrala and the Illinois Class Members have been injured in an amount to be proven at trial.

179. Plaintiff Prudhvi Samudrala, on behalf of himself and the Illinois Class Members, seeks actual damages, punitive damages, and attorneys' fees and costs and all other relief allowed under Illinois law.

## COUNT VII
### VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW § 349
### FOR UNFAIR AND DECEPTIVE TRADE PRACTICES
### N.Y. Gen. Bus. Law § 349

180. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

181. Plaintiff Rajeev Talreja and the New York Class Members bring this cause of action under N.Y. Gen. Bus. Law § 349 ("GBL § 349").

182.    At all relevant times, Musk and the Musk Personal Entities were engaged in trade or commerce.

183.    The sale and distribution of the Tesla vehicles in New York was a consumer-oriented act within the meaning of GBL § 349.

184.    GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

185.    Musk engaged in unfair or deceptive acts or practices as defined in GBL § 349, including by:

- Formulating and implementing a scheme to  misrepresent the ranges that Tesla vehicles can travel on a single charge;

- Formulating and implementing a scheme to omit disclosing to customers that normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles; and

- Formulating and implementing a scheme for Tesla vehicle range meters to misrepresent driving ranges.

186.    Musk's misconduct was material because it impacted central functions of Tesla vehicles such as the ranges they can travel on a single charge and the operation of the vehicles' range meters.

187.    Musk was under a duty to inform Plaintiff Rajeev Talreja and the New York Class Members about the true nature and quality of vehicle ranges.

188.    Exaggerating vehicle ranges, failing to disclose that the ranges were affected by normal temperature fluctuations, and manipulating the range meters to display false ranges

were deceptive and misleading and would influence a reasonable consumer's decision to purchase a Tesla.

189.    An objectively reasonable person would have been deceived by the above-described acts and omissions.  Plaintiff Rajeev Talreja and the New York Class Members suffered financial damages as a result of said unlawful conduct.  Plaintiff Rajeev Talreja and the New York Class Members were further injured when some of the unlawful practices were uncovered, which drove down the values of Tesla vehicles.

190.    Had Plaintiff Rajeev Talreja and the New York Class Members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated, that normal temperature fluctuations dramatically reduce the ranges of those vehicles, and that the range meter displayed false ranges, they would have taken steps to avoid damages by not purchasing the vehicles or paying less for the vehicles.

191.    As a direct and proximate result of Musk's violations of the GBL § 349, Plaintiff Rajeev Talreja and the New York Class Members have been injured in an amount to be proven at trial.

192.    Plaintiff Rajeev Talreja, on behalf of himself and the New York Class Members, seeks actual damages, punitive damages, and attorneys' fees and costs and all other relief allowed under New York law.

## COUNT VIII
## VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW § 350
## FOR FALSE ADVERTISING

193.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

194.    Plaintiff Rajeev Talreja and the New York Class Members bring this cause of action pursuant to GBL § 350, which prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service[.]"  The statute defines false advertising as "advertising, including labeling, of a commodity . . . [that is] misleading in a material respect." N.Y. Gen. Bus. Law § 350-a.

195.    At all relevant times, Musk and the Musk Personal Entities were engaged in trade or commerce.

196.    Musk's conduct, described above, qualifies as "false advertising" within the meaning of GBL § 350 because he publicly disseminates materially misleading statements, labeling, and information regarding the capabilities, including the range, of Tesla vehicles through advertising, marketing, labeling, packaging, and other representations.

197.    Musk violated GBL § 350 by overstating the range of Tesla vehicles in online advertisements, failing to disclose that normal temperature fluctuations reduce that range, and that he manipulated the range meter to display a false range.

198.    Musk's misrepresentations and omissions were material because they impact central functions of electric vehicles, like the range they could travel on a single charge and the operation of the vehicles' range meter.  Had Plaintiff Rajeev Talreja and the New York Class Members known that the range was exaggerated, that normal temperature fluctuations dramatically reduce the range, and that the range meter was manipulated to display a false range, they would not have purchased the Tesla vehicles or paid less for them.

199.    Plaintiff Rajeev Talreja and the New York Class Members have suffered lost or diminished use, enjoyment, and utility of their Tesla vehicles resulting from Musk's violations of GBL § 350.

200.    Through this conduct, Musk has engaged in false advertising and violating GBL § 350, and such violations injured Plaintiff Rajeev Talreja and the New York Class Members.  Plaintiff Rajeev Talreja, on behalf of himself and the New York Class members, seeks actual damages or $500 per violation, whichever is greater, by Musk.

201.    Through his conduct, Musk willfully or knowingly engaged in false advertising, including through his omissions. Accordingly, a punitive award is appropriate, such that the damages be increased in an amount three times actual damages up to ten thousand dollars ($10,000), for each of Musk's violations.

**COUNT IX**
**VIOLATIONS OF THE PENNSYLVANIA**
**UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**73 P.S. § 201-1**

202.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

203.    This action is brought under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, which prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce, including among others, "[r]epresenting that goods or services are of a particular standard, quality or grade . . . if they are of another," "[r]epresenting that goods or services have . . . characteristics . . . that they do not have and "[a]dvertising goods or services with intent not to sell them as advertised[.]" 73 P.S. § 201-2.

204.    The Pennsylvania Class Members and Musk are "person[s]" as defined by the statute.

205.    At all relevant times, Musk and the Musk Personal Entities were engaged in trade or commerce.

206.    Musk engaged in unfair or deceptive acts or practices as defined in 73 P.S. §
201-2, including by:

- Formulating and implementing a scheme to  misrepresent the ranges that Tesla
  vehicles can travel on a single charge;

- Formulating and implementing a scheme to omit disclosing to customers that
  normal temperature fluctuations can dramatically reduce the driving ranges of
  Tesla vehicles; and

- Formulating and implementing a scheme for Tesla vehicle range meters to
  misrepresent driving ranges.

207.    Musk's misconduct was material because it impacted central functions of Tesla
vehicles such as the ranges they can travel on a single charge and the operation of the vehicles'
range meters.

208.    Musk was under a duty to inform the Pennsylvania Class members about the
true nature and quality of vehicle ranges.

209.    Exaggerating vehicle ranges, failing to disclose that the ranges were affected by
normal temperature fluctuations, and manipulating the range meters to display false ranges
were deceptive and misleading and would influence a reasonable consumer's decision to
purchase a Tesla.

210.    An objectively reasonable person would have been deceived by the above-
described acts and omissions.  The Pennsylvania Class Members suffered financial damages
as a result of said unlawful conduct.  The Pennsylvania Class Members were further injured
when some of the unlawful practices were uncovered, which drove down the values of Tesla
vehicles.

211.    Had the Pennsylvania Class Members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated, that normal temperature fluctuations dramatically reduce the ranges of those vehicles, and that the range meter displayed false ranges, they would have taken steps to avoid damages by not purchasing the vehicles or paying less for the vehicles.

212.    As a direct and proximate result of Musk's violations of 73 P.S. § 201, the Pennsylvania Class Members have been injured in an amount to be proven at trial.

213.    Because Musk's deceptive acts were willful or knowing violations of 73 P.S. § 201, the Pennsylvania Class Members are entitled to up to three times actual damages sustained and not less than $100, whichever is greater.  73 P.S. § 201-9.2.  Alternatively, the Pennsylvania Class Members are entitled to up to actual damages or $100, whichever is greater.

214.    The Pennsylvania Class Members seek actual damages, statutory damages, and attorneys' fees and costs and all other relief allowed under Pennsylvania law.

**<u>COUNT X</u>**
**VIOLATIONS OF THE NEW JERSEY**
**CONSUMER FRAUD ACT**
**N.J. STAT. § 56:8-1**

215.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

216.    This cause of action is brought on behalf of members of the New Jersey Class pursuant to the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1 *et seq.* ("NJCFA").

217.    The New Jersey Class are "person[s]" and "consumer[s]" and Musk and the Musk Personal Entities are "Person[s]" engaged in the sale of merchandise.  N.J. Stat. § 56:8-1(d), (e).

218.   NJCFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice" N.J. Stat. § 56:8-2.

219.   Musk violated NJCFA by engaging in the conduct described above, which constitutes unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.  Specifically, Musk violated the NJCFA by:

- Formulating and implementing a scheme to  misrepresent the ranges that Tesla vehicles can travel on a single charge;

- Formulating and implementing a scheme to omit disclosing to customers that normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles; and

- Formulating and implementing a scheme for Tesla vehicle range meters to misrepresent driving ranges.

220.   Musk's misconduct was material because it impacted central functions of Tesla vehicles such as the ranges they can travel on a single charge and the operation of the vehicles' range meters.

221.   Musk was under a duty to inform the New Jersey Class members about the true nature and quality of vehicle ranges.

222.    Exaggerating vehicle ranges, failing to disclose that the ranges were affected by normal temperature fluctuations, and manipulating the range meters to display false ranges were deceptive and misleading and would influence a reasonable consumer's decision to purchase a Tesla.

223.    An objectively reasonable person would have been deceived by the above-described acts and omissions.  The New Jersey Class members suffered financial damages as a result of said unlawful conduct.  The New Jersey Class Members were further injured when some of the unlawful practices were uncovered, which drove down the values of Tesla vehicles.

224.    The New Jersey Class members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated, that normal temperature fluctuations dramatically reduce the ranges of those vehicles, and that the range meter displayed false ranges, they would have taken steps to avoid damages by not purchasing the vehicles or paying less for the vehicles.

225.    As a direct and proximate result of Musk's violations of the NJCFA, the New Jersey Class members have been injured in an amount to be proven at trial.  The New Jersey Class members are entitled to a refund for the amount they paid for their Tesla vehicles.  N.J. STAT. § 56:8-2.12.

226.    The New Jersey Class members seek actual damages, statutory damages, punitive damages, a refund, and attorneys' fees and costs and all other relief allowed under New Jersey law.

## COUNT XI
## VIOLATIONS OF THE CALIFORNIA
## CONSUMER LEGAL REMEDIES ACT
## Cal. Civ. Code § 1750

227.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

228.    This action is brought under the California Consumer Legal Remedies Act ("CLRA").  Cal. Civ. Code § 1750.

229.    The California Class members are "consumers" as defined by the CLRA.

230.    Musk is a "person[s]" as defined by the CLRA.

231.    The CLRA prohibits unfair or deceptive acts or practices in the sale or lease of goods, including among others, including among others, "[r]epresenting that goods or services are of a particular standard, quality or grade . . . if they are of another," "[r]epresenting that goods or services have . . . characteristics . . . that they do not have," and "[a]dvertising goods or services with intent not to sell them as advertised[.]" Cal. Civ. Code § 1770.

232.    Musk engaged in unfair or deceptive acts or practices as defined by the CLRA, including by:

- Formulating and implementing a scheme to  misrepresent the ranges that Tesla vehicles can travel on a single charge;

- Formulating and implementing a scheme to omit disclosing to customers that normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles; and

- Formulating and implementing a scheme for Tesla vehicle range meters to misrepresent driving ranges.

233.    Musk's misconduct was material because it impacted central functions of Tesla vehicles such as the ranges they can travel on a single charge and the operation of the vehicles' range meters.

234.    Musk was under a duty to inform the New York Class members about the true nature and quality of vehicle ranges.

235.    Exaggerating vehicle ranges, failing to disclose that the ranges were affected by normal temperature fluctuations, and manipulating the range meters to display false ranges were deceptive and misleading and would influence a reasonable consumer's decision to purchase a Tesla.

236.    An objectively reasonable person would have been deceived by the above-described acts and omissions.  The California Class Members suffered financial damages as a result of said unlawful conduct.  The California Class Members were further injured when some of the unlawful practices were uncovered, which drove down the values of Tesla vehicles.

237.    Had the California Class Members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated, that normal temperature fluctuations dramatically reduce the ranges of those vehicles, and that the range meter displayed false ranges, they would have taken steps to avoid damages by not purchasing the vehicles or paying less for the vehicles.

238.    As a direct and proximate result of Musk's violations of CLRA, the California Class Members have been injured in an amount to be proven at trial.

239.    The California Class Members are entitled to actual damages not less than $1,000 and punitive damages.

240.   The California Class Members seek actual damages, statutory damages, and attorneys' fees and costs and all other relief allowed under California law.

**COUNT XII**
**VIOLATIONS OF THE CALIFORNIA**
**UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code § 17200**

241.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

242.   Plaintiff Karen Kyutukyan and the California Class Members bring this cause of action pursuant to the California Unfair Competition Law ("UCL"), which prohibits "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

243.   As set forth above, Musk engaged in unfair competition and "unfair, deceptive, untrue or misleading advertising," in violation of the UCL, including by exaggerating the range of Tesla vehicles, failing to disclose that the range was dramatically reduced by normal temperature fluctuations, and manipulating the range meter on those vehicles to display a false range.

244.   Musk's practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750, and California Commercial Code § 2313, various other laws as described herein.

245.   As a direct and proximate result of Musk's violations of the Cal. Bus. & Prof. Code § 17200, Plaintiff Karen Kyutukyan, on behalf of herself and the California Class Members have been injured in an amount to be proven at trial.

246.   Plaintiff Karen Kyutukyan, on behalf of herself and the California Class Members, seeks actual damages and/or restitutionary disgorgement of all monies and

revenues generated as a result of Musk's violation of the UCL, along with all other relief allowed under the UCL and California law.

**COUNT XIII**
**VIOLATIONS OF THE CALIFORNIA**
**FALSE ADVERTISING LAW**
**Cal. Bus. & Prof. Code § 17500,** *et seq.*

247.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

248.    Plaintiff Karen Kyutukyan and the California Class Members bring this cause of action pursuant to California's False Advertising Law ("FAL"), which makes it unlawful for "any person,… with intent directly or indirectly to dispose of real or personal property… or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property… or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

249.    As set forth above, Musk made, caused to be made, and disseminated through California and the United States, through advertising, marketing, publications, public outcry, and proclamation, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care Musk should have known to be untrue and misleading to consumers, including Plaintiffs and other Class members.

250.    Musk's practices are unlawful because they violate Cal. Bus. & Prof. Code § 17500.

251.    A reasonable person would rely on Musk's misrepresentations and material omissions.

252.    As a direct and proximate result of Musk's violations of the Cal. Bus. & Prof. Code § 17500, Plaintiff Karen Kyutukyan, on behalf of herself and the California Class Members have been injured in an amount to be proven at trial.

253.    Plaintiff Karen Kyutukyan, on behalf of herself and the California Class Members, seeks actual damages and/or restitutionary disgorgement of all monies and revenues generated as a result of Musk's violation of the FAL, along with all other relief allowed under the FAL and California law.

<u>COUNT XIV</u>
**VIOLATIONS OF THE TEXAS**
**DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT**
**Tex. Bus. & Com. Code §§ 17.41,** *et seq.*

254.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

255.    This action is brought under the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPA").  Tex. Bus. & Com. Code § 17.46.

256.    The Texas Class Members are "consumers" within the meaning of Tex. Bus. & Com. Code § 17.45(4).

257.    At all relevant times, Musk and the Musk Personal Entities were engaged in trade or commerce within the meaning of the TDTPA.

258.    The TDTPA prohibits "false, misleading, or deceptive acts or services in the conduct of any trade or commerce[.]"  Tex. Bus. & Com. Code § 17.46(a).

259.    Musk engaged in unfair or deceptive acts or practices as defined in Tex. Bus. & Com. Code §§ 17.46(b) & 17.50(a) by:

- Formulating and implementing a scheme to  misrepresent the ranges that Tesla vehicles can travel on a single charge;

- Formulating and implementing a scheme to omit disclosing to customers that normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles; and

- Formulating and implementing a scheme for Tesla vehicle range meters to misrepresent driving ranges.

260.    Musk also violated the TDTPA because his actions constitute "an unconscionable action or course of action" under Tex. Bus. & Com. Code § 17.50(a)(3).

261.    Musk's misconduct was material because it impacted central functions of Tesla vehicles such as the ranges they can travel on a single charge and the operation of the vehicles' range meters.

262.    Musk was under a duty to inform the Texas Class members about the true nature and quality of vehicle ranges.

263.    Exaggerating vehicle ranges, failing to disclose that the ranges were affected by normal temperature fluctuations, and manipulating the range meters to display false ranges were deceptive and misleading and would influence a reasonable consumer's decision to purchase a Tesla.

264.    An objectively reasonable person would have been deceived by the above-described acts and omissions.  The Texas Class Members suffered financial damages as a

result of said unlawful conduct.  The Texas Class Members were further injured when some of the unlawful practices were uncovered, which drove down the values of Tesla vehicles.

265.    Had the Texas Class Members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated, that normal temperature fluctuations dramatically reduce the ranges of those vehicles, and that the range meter displayed false ranges, they would have taken steps to avoid damages by not purchasing the vehicles or paying less for the vehicles.

266.    As a direct and proximate result of Musk's violations of the TDTPA, the Texas Class Members have been injured in an amount to be proven at trial.

267.    Because Musk's deceptive acts were willful or knowing violations of the TDTPA, the Texas Class Members are entitled to up to three times actual damages sustained. Tex. Bus. & Com. Code § 17.50(b)(1).

268.    The Texas Class Members seek actual damages, statutory damages, and attorneys' fees and costs and all other relief allowed under Texas law.

**COUNT XV**
**VIOLATIONS OF THE WASHINGTON**
**CONSUMER PROTECTION ACT**
**Wash. Rev. Code § 19.86.010, *et seq.***

269.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

270.    Plaintiff Chris Watkins and the Washington Class Members bring this cause of action under the Washington Consumer Protection Act ("Washington CPA").  Wash. Rev. Code § 19.86.010, *et seq.*

271.    Plaintiff Chris Watkins, the Washington Class Members, and Musk are "persons[s]" within the meaning of Wash. Rev. Code § 19.86.010(2).

272.    At all relevant times, Musk and the Musk Personal Entities were engaged in trade or commerce within the meaning of the Washington CPA.

273.    The Washington CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

274.    Musk engaged in unfair or deceptive acts or practices that violated the Washington CPA by:

- Formulating and implementing a scheme to  misrepresent the ranges that Tesla vehicles can travel on a single charge;

- Formulating and implementing a scheme to omit disclosing to customers that normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles; and

- Formulating and implementing a scheme for Tesla vehicle range meters to misrepresent driving ranges.

275.    Musk's misconduct was material because it impacted central functions of Tesla vehicles such as the ranges they can travel on a single charge and the operation of the vehicles' range meters.

276.    Musk was under a duty to inform Plaintiff Chris Watkins and the Washington Class members about the true nature and quality of vehicle ranges.

277.    Exaggerating vehicle ranges, failing to disclose that the ranges were affected by normal temperature fluctuations, and manipulating the range meters to display false ranges were deceptive and misleading and would influence a reasonable consumer's decision to purchase a Tesla.

278.   An objectively reasonable person would have been deceived by the above-described acts and omissions.  Plaintiff Chris Watkins and the Washington Class Members suffered financial damages as a result of said unlawful conduct.  Plaintiff Chris Watkins and the Washington Class Members were further injured when some of the unlawful practices were uncovered, which drove down the values of Tesla vehicles.

279.   Had Plaintiff Chris Watkins and the Washington Class Members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated, that normal temperature fluctuations dramatically reduce the ranges of those vehicles, and that the range meter displayed false ranges, they would have taken steps to avoid damages by not purchasing the vehicles or paying less for the vehicles.

280.   As a direct and proximate result of Musk's violations of the Washington CPA, Plaintiff Chris Watkins and the Washington Class Members have been injured in an amount to be proven at trial.

281.   Because Musk's deceptive acts were willful or knowing violations of the Washington CPA, Plaintiff Chris Watkins and the Washington Class Members are entitled to up to three times actual damages sustained.  Wash. Rev. Code § 19.86.090.

282.   Plaintiff Chris Watkins and the Washington Class Members seek actual damages, statutory damages, and attorneys' fees and costs and all other relief allowed under Washington law.

**COUNT XVI**
**VIOLATIONS OF THE KENTUCKY**
**CONSUMER PROTECTION ACT**
**Ky. Rev. Stat. § 367.110,** *et seq.*

283.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as fully set forth herein.

284.   Plaintiff Drew Talreja and the Kentucky Class members bring this action pursuant to the Kentucky Consumer Protection Act ("Kentucky CPA"), which prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce ..." Ky. Rev. Stat. § 367.170(1).

285.   Plaintiff Drew Talreja, the Kentucky Class Members, and Musk are "persons[s]" within the meaning of Ky. Rev. Stat. § 367.170(1).

286.   At all relevant times, Musk and the Musk Personal Entities were engaged in trade or commerce within the meaning of the Kentucky CPA.  Ky. Rev. Stat. Ann. § 367.110(2).

287.   Musk engaged in unfair, false, misleading, or deceptive acts or practices that violated the Kentucky CPA by:

- Formulating and implementing a scheme to misrepresent the ranges that Tesla vehicles can travel on a single charge;

- Formulating and implementing a scheme to omit disclosing to customers that normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles; and

- Formulating and implementing a scheme for Tesla vehicle range meters to misrepresent driving ranges.

288.   Musk's misconduct was material because it impacted central functions of Tesla vehicles such as the ranges they can travel on a single charge and the operation of the vehicles' range meters.

289.   Musk was under a duty to inform Plaintiff Drew Talreja and the Kentucky Class members about the true nature and quality of vehicle ranges.

290.    Exaggerating vehicle ranges, failing to disclose that the ranges were affected by normal temperature fluctuations, and manipulating the range meters to display false ranges were deceptive and misleading and would influence a reasonable consumer's decision to purchase a Tesla.

291.    An objectively reasonable person would have been deceived by the above-described acts and omissions. Plaintiff Drew Talreja and the Kentucky Class members suffered financial damages as a result of said unlawful conduct.  Plaintiff Drew Talreja and the Kentucky Class members were further injured when some of the unlawful practices were uncovered, which drove down the values of Tesla vehicles.

292.    Had Plaintiff Drew Talreja and the Kentucky Class members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated, that normal temperature fluctuations can dramatically reduce the ranges of those vehicles, and that the range meters displayed false ranges, they would have taken steps to avoid damages by not purchasing the vehicles or paying less for the vehicles.

293.    As a direct and proximate result of Musk's violations of the Kentucky CPA, Plaintiff Drew Talreja and the Kentucky Class members have suffered injury-in-fact and/or actual damage.

294.    Plaintiff Drew Talreja and the Kentucky Class members seek actual damages, statutory damages, and attorneys' fees and costs and all other relief allowed under Kentucky law.

## COUNT XVII
### Fraud
### (On behalf of Plaintiffs and the Nationwide Class)

295.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

296.   Musk engaged in the misconduct described above, which constituted material misrepresentations and omissions of fact.

297.   Musk's misconduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the vehicles have a much greater vehicle range than they do.

298.   Plaintiffs and the members of the nationwide class considered the Tesla vehicles' driving range to be an important factor when purchasing their Tesla vehicles.  The vehicle's advertised range is material to the average, reasonable consumer.

299.   Plaintiffs and the members of the nationwide class were actually misled and deceived and were induced by Musk to purchase the vehicles.  Had Musk truthfully stated the vehicle's range, Plaintiffs the members of the nationwide class would have either not purchased the vehicles, or else would have paid substantially less for them.

300.   As a result of Musk's conduct, Plaintiffs and the members of the nationwide class have been damaged in an amount to be determined at trial.

## COUNT XVIII
### Unjust Enrichment
### (On behalf of Plaintiffs and the Nationwide Class)

301.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

302.    Plaintiffs and the members of the nationwide class conferred a benefit on Musk by purchasing their vehicles.

303.    Musk had knowledge that this benefit was conferred upon him.

304.    Because of Musk's wrongful acts and misrepresentations and omissions described above, Plaintiffs and the nationwide class members paid a higher price for their vehicles than the vehicles' true value and Musk obtained money which rightfully belongs to Plaintiffs and the members of the nationwide class.

305.    Musk derived benefits from those Plaintiffs and the nationwide class members' vehicle purchases.

306.    Musk has been unjustly enriched at the expense of Plaintiffs and the members of the nationwide class, and his retention of this benefit under the circumstances would be inequitable.

307.    Plaintiffs seek an order requiring Musk to make restitution to Plaintiffs and the members of the nationwide class.

## PRAYER FOR RELIEF

**WHEREFORE**, Claimant respectfully requests that the Court:

a.  Determine that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23, and issue an order certifying the class defined above;

b.  Appoint Plaintiffs as the representative of the Classes and their counsel as Class counsel;

c.  Award all actual, general, special, incidental, statutory, punitive damages, and attorney's fees, to which Plaintiffs and the Class members are entitled;

d.   Award injunctive relief;

e.   Award pre-judgment and post-judgment interest on such monetary relief; and

f.   Grant any other relief that the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a jury trial on all issues so triable.

*/s/ Kenneth D. Quat*
Kenneth D. Quat
BBO #408640
QUAT LAW OFFICES
373 Winch Street
Framingham, Massachusetts 01701
T: 508-872-1261
E: ken@quatlaw.com

WATSTEIN TEREPKA LLP
Ryan D. Watstein (pro hac vice pending)
T: 404-782-0696
E: ryan@wtlaw.com
Alexander D. Terepka (pro hac vice pending)
T: 404-782-9821
E: alex@wtlaw.com
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318

*Counsel for Plaintiffs*