**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| CHRIS WATKINS, GLOBAL LEASE GROUP INC., PRUDHVI SAMUDRALA, WILLIAM WILSON, KAREN KYUTUKYAN, RAJEEV TALREJA, GIORGIO PETRUZZIELLO, and DREW TALREJA, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> ELON R. MUSK, ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003, and EXCESSION LLC, <br><br> *Defendants*. | Civil Action No. 1:24-cv-11384-PBS <br><br> **ORAL ARGUMENT REQUESTED** |

---

**DEFENDANT ELON R. MUSK'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS**

---

# TABLE OF CONTENTS

**Page**

BACKGROUND ...................................................................................................................2

    A.    The EPA Approves and Regulates the Range Estimates that Manufacturers, Including Tesla, Must Provide with New Vehicles ......................2

    B.    The FTC Regulates Claims About Fuel Economy and EV Range, and Requires Manufacturers, Including Tesla, to Use the EPA-Approved Estimates ...............................................................................................................4

    C.    Tesla's Advertised EPA Ranges ....................................................................4

    D.    Tesla's Dashboard Displays ...........................................................................5

I.    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST MUSK UNDER RULE 12(B)(1), BECAUSE THEY ARE BASED ON EPA RANGE ESTIMATES AND, THEREFORE, PREEMPTED AS A MATTER OF LAW ...............6

    A.    Claims Based on EPA Ranges Are Preempted as a Matter of Law ........................6

        1.    Plaintiffs' Claims Are Expressly Preempted Because They Improperly Seek to Impose Range Estimate Disclosures Under State Law that Differ from Federal Requirements ......................................8

        2.    Plaintiffs' Claims are Also Impliedly Preempted as a Matter of Law ................................................................................................................9

        3.    Plaintiffs' Allegations of Vehicle Ranges Are About EPA Ranges and Are Preempted as a Matter of Law .....................................................12

II.    THE COURT SHOULD DISMISS ANY REMAINING CLAIMS AGAINST MUSK UNDER RULE 12(B)(6) ........................................................................................14

    A.    Plaintiffs Have Failed to Sufficiently Allege Any Claims Against Musk ............14

        1.    Plaintiffs' Allegations of Musk's Involvement with Tesla's Website and Range Displays Are Insufficient to Plausibly State Any Claim ...............................................................................................15

        2.    Plaintiffs' Allegations Concerning Range Displays Are Also Insufficient to Plausibly State a Claim Because They Do Not Support Reliance or Causation .................................................................17

        3.    Plaintiffs' Unjust Enrichment Claim Against Musk Also Should Be Dismissed Because Plaintiffs Have an Adequate Remedy at Law ............18

CONCLUSION ...................................................................................................................19

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................13, 15

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001)..........................................................................................................9

*In re Citigroup, Inc.*,
  535 F.3d 45 (1st Cir. 2008)...........................................................................................13, 15

*D'Agostino v. ev3, Inc.*,
  845 F.3d 1 (1st Cir. 2016)..............................................................................................14, 15

*Fisher v. Monster Beverage Corp.*,
  2013 WL 4804385 (C.D. Cal. July 9, 2013)........................................................................17

*FMC Corp. v. Holliday*,
  498 U.S. 52 (1990)............................................................................................................7

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,
  2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015)...................................................................8, 9

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs.
  Litig.*,
  2022 WL 551221 (E.D. Mich. Feb. 23, 2022),
  *aff'd*, 65 F.4th 851 (6th Cir. 2023), *cert denied sub nom.*
  *Lloyd v. Ford Motor Co.*, 144 S. Ct. 332 (2023) ..................................................................9

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs.
  Litig.*,
  65 F.4th 851 (6th Cir. 2023) ............................................................................................7

*Gill v. United States*,
  471 F.3d 204 (1st Cir. 2006).............................................................................................6

*Hurst v. BMW of N. Am., LLC*,
  2023 WL 4760442 (D.N.J. July 26, 2023).................................................................... 7-8, 9

*Kline & Co. v. MCI Commc'ns, Corp.*,
  98 F. Supp. 2d 69 (D. Mass. 2000) ...................................................................................7

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ......................................................................................................17

*Mack v. Cultural Care Inc.*,
　2020 WL 4673522 (D. Mass. Aug. 12, 2020) ....................................................................18

*Maldonado v. Fontanes*,
　568 F.3d 263 (1st Cir. 2009)..............................................................................................14

*Merlonghi v. United States*,
　620 F.3d 50 (1st Cir. 2010)..................................................................................................6

*Moore v. Apple, Inc.*,
　73 F. Supp. 3d 1191 (N.D. Cal. 2014) ...............................................................................17

*Mulder v. Koh''s Dep't Stores, Inc.*,
　865 F.3d 17 (1st Cir. 2017)................................................................................................14

*Murphy v. United States*,
　45 F.3d 520 (1st Cir. 1995)..................................................................................................6

*N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*,
　567 F.3d 8 (1st Cir. 2009)..................................................................................................14

*O'Hara v. Diageo-Guinness, USA, Inc.*,
　306 F. Supp. 3d 441 (D. Mass. 2018) ................................................................................18

*Project Veritas Action Fund v. Conley*,
　270 F. Supp. 3d 337 (D. Mass. 2017) ..................................................................................6

*Reynolds v. Tesla, Inc.*,
　No. 23-cv-09665 (C.D. Cal. June 21, 2024) (Dkt. 26) ..................................................5, 7, 11

*Rymes Heating Oils, Inc. v. Springfield Terminal R. Co.*,
　358 F.3d 82 (1st Cir. 2004)..................................................................................................7

*Sateriale v. R.J. Reynolds Tobacco Co.*,
　697 F.3d 777 (9th Cir. 2012) .............................................................................................17

*Shaulis v. Nordstrom, Inc.*,
　865 F.3d 1 (1st Cir. 2017)............................................................................................17, 18

*Silkwood v. Kerr-McGee Corp.*,
　464 U.S. 238 (1984)............................................................................................................9

*Tomasella v. Nestlé USA, Inc.*,
　962 F.3d 60 (1st Cir. 2020)................................................................................................18

## **Constitution**

U.S. Const. art. VI, cl. 2 .................................................................................................7

## **Statutes**

18 U.S.C. § 1001 .......................................................................................................11

42 U.S.C. § 7413 .......................................................................................................11

49 U.S.C. § 32902 .......................................................................................................9

49 U.S.C. § 32904 .......................................................................................................9


49 U.S.C. § 32908 ................................................................................................2, 8, 9

49 U.S.C. § 32911 .....................................................................................................11

49 U.S.C. § 32912 .....................................................................................................11

49 U.S.C. § 32919 ..................................................................................................8, 9

Cal. Bus. & Prof. Code § 17500, *et seq.* ...............................................................17

Cal. Bus. & Prof. Code § 17200 ..............................................................................17

Cal. Civ. Code § 1750 ..............................................................................................17

EPCA ...........................................................................................................2, 8, 11

M.G.L. c. 93A ....................................................................................................14, 17

## **Regulations**

16 C.F.R. § 1.5 ......................................................................................................4, 11

16 C.F.R. § 259.4 .............................................................................................4, 10, 11

40 C.F.R. § 600.008 .........................................................................................3, 11

40 C.F.R. § 600.210-12 .............................................................................................3

40 C.F.R.§ 1066.2 ..........................................................................................10, 11

71 Fed. Reg. 77872 (Dec. 27, 2006) .............................................................................3

76 Fed. Reg. 39478 (July 6, 2011) ...............................................................................3

## **Rules**

Fed. R. Civ. P. 8(a) ...................................................................................................14

Fed. R. Civ. P. 9(b) ...........................................................................................2, 14, 15

Fed. R. Civ. P. 12(b) ...................................................................................2, 6, 13, 18

## **Other Authorities**

Restatement (Second) of Torts § 537 (1977) ...............................................................17

Restatement (Second) of Torts § 546 (1977) ...............................................................17

*Electric & Plug-In Hybrid Electric Vehicles*, EPA,
    https://www.epa.gov/greenvehicles/electric-plug-hybrid-electric-vehicles
    (Oct. 10, 2023) .....................................................................................................10

*Learn More about the Fuel Economy Label*, EPA,
    https://www.epa.gov/greenvehicles/learn-more-about-fuel-economy-label-
    text-only ..............................................................................................................10

*Your Mileage Will Vary*, EPA,
    https://www.fueleconomy.gov/feg/why_differ.shtml
    (last visited Aug. 4, 2024)......................................................................................3

Plaintiffs are purchasers of vehicles made by Tesla, Inc. ("Tesla") who allege that they and other customers were induced to purchase Tesla vehicles based upon exaggerated driving ranges. ***Plaintiffs ignore the fact that Tesla's range estimates are approved by the Environmental Protection Agency ("EPA"), mandated to be disclosed by the Federal Trade Commission ("FTC"), and any claims based on EPA estimates are <u>preempted</u> by federal law.***

Moreover, although Tesla's alleged actions are at the center of this case, Plaintiffs did ***not*** name Tesla as a defendant.  Rather, they brought their claims—for violations of various state consumer protection statutes, fraud, and unjust enrichment—against Tesla's CEO, Elon Musk, in his individual capacity, as well as the family office that allegedly manages his money and a trust that allegedly holds his Tesla stock.[1]

Plaintiffs' failure to name Tesla is ***not*** an oversight.  Their Complaint is simply a dressed-up, copycat action that attempts to avoid the consequences of the cases already filed and underway in California state and federal courts against Tesla based on the ***same core factual allegations and legal claims***.  As detailed in Musk's concurrently filed Motion to Compel Arbitration or to Stay, months before *this* Complaint was filed, a federal court in California already compelled arbitration in one of these cases based on arbitration agreements with Tesla identical to the ones at issue in this case.[2]  And in a separate, first-filed action, yet another federal court in California is already hearing and substantively addressing substantially similar claims for plaintiffs who do not have arbitration agreements.[3]

---

[1]  Defendants Elon Musk Revocable Trust Dated July 22, 2003 and Excession, LLC move this Court separately and concurrently to dismiss the claims against them for lack of personal jurisdiction and, alternatively, failure to state a claim.

[2]  As explained in the Motion to Compel Arbitration or Stay, this Court should do the same given the valid arbitration agreements' application to the claims and Musk's ability to enforce them against the Plaintiffs.

[3]  And, for the reasons discussed in the Motion to Compel Arbitration or Stay, this Court should stay any claims not compelled to arbitration pending the resolution of the first-filed action pending in California federal court.

Plaintiffs thus seek to avoid arbitration and the first-to-file rule by opportunistically (and implausibly) pleading their claims against Musk as an individual.  This Court should dismiss with prejudice the claims against Musk for at least two reasons:

___First___, the Plaintiffs' claims concern range estimates that are regulated by the EPA and FTC. As Tesla has already argued and as another federal court has already found, this comprehensive federal regulatory framework ***preempts*** such claims as a matter of law.[4]  This Court should follow that ruling and dismiss with prejudice Plaintiffs' preempted claims pursuant to Fed. R. Civ. P. 12(b)(1).

___Second___, Plaintiffs fail to sufficiently plead Musk's involvement concerning Tesla's EPA vehicle ranges or alleged manipulation of the in-vehicle displays—let alone with the particularity Fed. R. Civ. P. 9(b) requires.  The gravamen of Plaintiffs' claims is that because Musk is Tesla's CEO and has made generalized statements about driving ranges, that "must" mean he was involved in a purported effort to exaggerate Tesla's advertised EPA driving ranges.  These allegations are conclusory and not sufficient to support Musk's individual liability.  Plaintiffs' claims therefore should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

### A.    The EPA Approves and Regulates the Range Estimates that Manufacturers, Including Tesla, Must Provide with New Vehicles

The testing and disclosure of estimated fuel economy and electric vehicle ("EV") ranges for new vehicles sold in the United States are governed by a comprehensive federal regulatory scheme that Congress developed through the Energy Policy and Conservation Act of 1975 ("EPCA").  The EPA and the FTC administer this regulatory scheme.

---

[4]   Decl. of Eric Wolkoff in Supp. of Def. Elon R. Musk's Mot. to Compel Arbitration or to Stay and Defs.' Motions to Dismiss ("Wolkoff Decl."), Ex. 27 (*Reynolds* Order).

Under EPA regulations, every new vehicle sold in the United States must disclose fuel economy or EV range estimates through a "Monroney" label.  49 U.S.C. § 32908(b)(1).  The EPA has set forth an approved process for calculating these fuel economy and EV range estimates. 40 C.F.R. § 600.210-12.  Importantly, these approximations permit "apples-to-apples" comparisons between different vehicles based on a common certification process.  *See* Fuel Economy Labeling of Motor Vehicles: Revisions to Improve Calculation of Fuel Economy Estimates, 71 Fed. Reg. 77872, 77874 (Dec. 27, 2006) ("We believe the new fuel economy estimates will provide car buyers with useful information when comparing the fuel economy of different vehicles.").

The current EPA testing regime gives automobile companies a choice between two methods for calculating (and testing) fuel efficiency and estimating fuel economy/range.  *See* 40 C.F.R. § 600.210-12.  Once a manufacturer submits data for review, the EPA must determine whether the data is "reasonable and representative."  *Id.* § 600.008(c)(1).

The EPA has repeatedly stressed in public guidance that its fuel economy estimates "are a useful tool for comparing the fuel economies of different vehicles but may not accurately predict the average [range or MPG] *you* will get."[5]  Indeed, the EPA expressly acknowledges that a vehicle's fuel economy and EV range "will vary," *id.*, and its required range estimates are not "perfect" figures intended to predict the performance of each vehicle for each driver under all conditions.  71 Fed. Reg. at 77874; *see also* Revisions and Additions to Motor Vehicle Fuel Economy Label, 76 Fed. Reg. 39478, 39505 (July 6, 2011) (emphasizing "tradition" of ensuring consumers know that EPA estimates do not reflect real-world fuel economy).  As the EPA guidance makes clear, they are estimates, not guarantees.

---

[5] *Your Mileage Will Vary*, EPA, https://www.fueleconomy.gov/feg/why_differ.shtml (last visited Aug. 4, 2024).

**B.     The FTC Regulates Claims About Fuel Economy and EV Range, and Requires Manufacturers, Including Tesla, to Use the EPA-Approved Estimates**

Where the EPA leaves off, the FTC takes over.  The FTC regulates advertising of fuel economy and EV range estimates by manufacturers, including Tesla.  The FTC has advised manufacturers to use EPA estimates to avoid "mislead[ing] consumers."  16 C.F.R. § 259.4(b). The FTC has further cautioned that "[f]ailure to comply with [its] guides may result in corrective action by the Commission under applicable statutory provisions."  *Id.* § 1.5.  In other words, the FTC requires manufacturers to use the EPA-approved range estimates for electric vehicles.

**C.     Tesla's Advertised EPA Ranges**

Plaintiffs' claims hinge on their assertion that Tesla allegedly exaggerated the EPA-mandated vehicle driving ranges it advertised on its website, including by omitting that normal temperature fluctuations can affect the driving range.  *See* Compl. ¶¶ 97, 111, 125, 139, 157, 172, 185, 197, 206, 219, 232, 243, 249, 259, 274, 287, 296, 304 (Dkt. 1).  It is the ranges advertised on Tesla's website—the point of purchase—that Plaintiffs claim caused them harm.   *E.g.*, Compl. ¶¶ 34, 72-79, 102.  Importantly, these ***range estimates were EPA estimates***.  Unlike Plaintiffs' undated screenshots allegedly taken from Tesla's website, *id.* ¶¶ 35-37, the actual order pages of Tesla's website identified the ranges it displayed as "EPA est." on or about the date of Plaintiffs' orders.[6]  *See* Wolkoff Decl. Exs. 1, 4, 7, 10, 12, 14, 16-17, 20 (Tesla website order pages).  The Complaint does *not,* and *cannot,* allege otherwise.  *See* Compl. ¶ 35.  Tesla also provides "Monroney" labels, that explain that the estimates are EPA estimates and that "[a]ctual results will vary for many reasons, including driving conditions."[7]  ***Indeed, a federal court in***

---

[6]  FTC regulations state that the phrase "'EPA estimate(s)' or . . . equivalent language . . . informs consumers that they will not necessarily achieve the stated . . . driving range." 16 C.F.R. § 259.4(d).

[7]  *See* Aff. of Jake Gough in Supp. of Def. Elon R. Musk's Mot. to Dismiss ("Gough MTD Aff."), Exs. A-I.

***California <u>already dismissed</u> claims based on these same allegations against Tesla because federal law <u>preempts</u> claims concerning EPA ranges***.  Wolkoff Decl., Ex. 27 (*Reynolds* Order). This preemption extends to prevent claims that purport to add requirements to manufacturers, including Tesla, beyond those in the EPA regulations, such as Plaintiffs' allegations that Tesla somehow erred by not providing an alternative estimated range that takes into account "real world" driving conditions, like temperature or speed, that could affect a vehicles' range.  *See, e.g.,* Compl. ¶¶ 34-35, 50.

Plaintiffs also assert that Musk—who they sue in his individual capacity instead of Tesla—made public statements about the EPA vehicle ranges, they suggesting (without basis) that Musk was somehow involved in the decision to use EPA range estimates on Tesla's website instead of some undefined alternative calculation.  *Id.* ¶ 41 ("Musk's numerous false claims about Tesla driving ranges . . . confirm that he manipulated Tesla to fraudulently overstate vehicle ranges"). But again, Tesla ***is required by federal law*** to calculate range based on the EPA's approved formulas and disclose this information to potential customers.

### D.    Tesla's Dashboard Displays

Plaintiffs also claim they were subjected to "overstated" range estimates on their in-vehicle displays.  *See id.* ¶¶ 97, 111, 125, 139, 157, 172, 185, 197, 206, 219, 232, 243, 249, 259, 274, 287, 296, 304.  They allege Mr. Musk purportedly directed Tesla to manipulate the in-vehicle range displays.  *Id.* ¶¶ 7, 49, 52, 54, 56, 58, 88.[8]  Tesla's in-vehicle displays provide "an estimate of the remaining battery energy based on EPA-rated consumption."  Wolkoff Decl. at ¶¶ 7, 10, 13, 28;

---

[8]  Plaintiffs acknowledge that to sue Mr. Musk individually they must plead that he directed Tesla's actions that they claim caused them harm.  Compl. ¶ 3.  They (unsuccessfully) attempt to bridge the chasm between Tesla's actions and Mr. Musk's individual liability by packing their Complaint with allegations about Mr. Musk's general power and influence at Tesla.  These allegations, though salacious and made for media, are unrelated to the alleged Tesla conduct at issue.

*id.,* Exs. 2, 5, 8, 18 (Owner's Manuals); *see also* Compl. ¶ 55 (alleging that the displays "purport[] to inform drivers approximately how far their vehicles can travel on the remaining battery charge"). Thus, Plaintiffs theory is that because the EPA ranges are inaccurate, the vehicles' dashboard displays—based on the EPA range—also "reflect the misrepresented driving ranges." Compl. ¶¶ 7, 54. This, again, is preempted. Moreover, Tesla owner's manuals specifically disclose that the EPA range used on in-vehicle displays may "not account for your personal driving patterns or external conditions. The displayed range . . . may decrease faster than the actual distance driven." Wolkoff Decl. at ¶¶ 7, 10, 13, 28; *id.,* Exs. 2, 5, 8, 18 (Owner's Manuals).

## I. THE COURT SHOULD DISMISS ALL CLAIMS AGAINST MUSK UNDER RULE 12(B)(1), BECAUSE THEY ARE BASED ON EPA RANGE ESTIMATES AND, THEREFORE, PREEMPTED AS A MATTER OF LAW

A defendant may move to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), triggering a burden for the plaintiff to prove that jurisdiction exists. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (citation omitted). The court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). The court "may also consider other materials in the district court record, including where those materials contradict the allegations in the complaint." *Project Veritas Action Fund v. Conley*, 270 F. Supp. 3d 337, 340 (D. Mass. 2017); *see also Merlonghi*, 620 F.3d at 54 ("The district court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" (citation omitted)). If a defendant brings motions under both "both Rules 12(b)(1) and 12(b)(6)" then the court should "ordinarily" decide the 12(b)(1) motion first. *Gill v. United States*, 471 F.3d 204, 206 n.3 (1st Cir. 2006) (citation omitted).

### A. Claims Based on EPA Ranges Are Preempted as a Matter of Law

Pursuant to Rule 12(b)(1), Plaintiffs' claims against Musk concerning website and its in-

vehicle displays must be dismissed because they are ***preempted*** by the authority Congress granted to the EPA and FTC, and such preemption negates the court's subject matter jurisdiction.  *See* Wolkoff Decl., Ex. 27 (*Reynolds* Order) at 6-7 (dismissing nearly identical claims against Tesla regarding statements on website as preempted and citing *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 862-63 (6th Cir. 2023), *cert. denied sub nom. Lloyd v. Ford Motor Co.*, 144 S. Ct. 332 (2023)*); see also*, *Kline & Co. v. MCI Commc'ns, Corp.*, 98 F. Supp. 2d 69, 72 (D. Mass. 2000) (holding that challenge under filed-rate doctrine must be heard by Federal Communications Commission ("FCC")); *Rymes Heating Oils, Inc. v. Springfield Terminal R. Co.*, 358 F.3d 82, 90 (1st Cir. 2004) (dismissing claim where "primary jurisdiction" is vested in an agency).

Pursuant to the Supremacy Clause of the Constitution, any state law conflicting with federal law is preempted and without effect.  U.S. Const. art. VI, cl. 2.  "In determining whether federal law pre-empts a state statute, [courts] look to congressional intent.  Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose."  *FMC Corp. v. Holliday*, 498 U.S. 52, 56–57 (1990) (citation and internal quotation marks omitted).  Plaintiffs' claims here are both expressly and impliedly preempted as a matter of law.

Plaintiffs' state law claims rest on the theory that the "the ranges that Tesla vehicles can travel on a single charge" were purportedly "misrepresent[ed]," and that information "disclosing to customers that normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles" was "omit[ted]."  Compl. ¶ 97.  Courts have routinely found claims such as Plaintiffs' preempted insofar as they would require a manufacturer to disclose something *other than* EPA ranges.  *See, e.g.*, *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. &*

*Sales Pracs. Litig.*, 65 F.4th at 860-64, 866-67 (noting that "[t]he EPA does not require the figures to be strictly accurate; rather, they must be reasonably related to the testing performed and the EPA's expected fuel economy ratings," and holding that claims against Ford for providing "inaccurate fuel economy estimate[s]" were preempted); *Hurst v. BMW of N. Am., LLC*, 2023 WL 4760442, at *4 (D.N.J. July 26, 2023) (finding preemption and holding that, "[r]equiring Defendant to provide different fuel economy or range estimates on the window sticker based on what Plaintiff considers real-world conditions in New Jersey would defeat this Congressional intent to establish uniform testing and labeling standards nationwide"); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369, at *27 (S.D.N.Y. Nov. 12, 2015) ("[T]o the extent that Plaintiffs' claims are based on the contention that Defendant failed to independently test and disclose the fuel economy of the C–MAX in order to determine its 'actual' performance . . . , the Court finds that those claims are preempted by the EPCA and FTC, because they seek to impose a regime above and beyond that required by those regulations.").

This Court should reach the same result.  As further discussed immediately below, Plaintiffs' claims are both expressly and impliedly preempted and therefore should be dismissed with prejudice.

### 1. Plaintiffs' Claims Are Expressly Preempted Because They Improperly Seek to Impose Range Estimate Disclosures Under State Law that Differ from Federal Requirements

Under the express preemption provision of the EPCA, "a State or a political subdivision of a State may adopt or enforce a law or regulation on disclosure of fuel economy or fuel operating costs for an automobile covered by [49 U.S.C.] section 32908 only if the law or regulation is identical to that requirement."  49 U.S.C. § 32919(b).  In other words, no state law may obligate a vehicle manufacturer, such as Tesla, to comply with any requirement pertaining to the disclosure

of a vehicle's fuel economy or range unless an identical requirement is already imposed by Section 32908.  There is none here, nor do Plaintiffs allege otherwise.

Plaintiffs' legal theory seeks to impose liability on Musk for Tesla supposedly "misrepresent[ing]" the driving range of its vehicles.  *E.g.*, Compl. ¶ 97.  Plaintiffs do not allege facts, however, to show that Tesla made *any* statement that allegedly caused them harm, including on its website or in any advertisement, beyond disclosing the EPA-approved estimate for its mileage range estimates.  That is fatal to their claims against Musk.

Under Plaintiffs' legal theory, Tesla would have to disclose information about the range estimate for its vehicles *different from* what the EPA has approved and is required by 49 U.S.C. § 32908 to avoid its CEO being subject to personal liability under state law claims.  Federal preemption prohibits putting Musk or Tesla in that untenable position.  *See, e.g.*, *Hurst*, 2023 WL 4760442, at *4 (finding claims based on disclosure of EPA estimates expressly preempted); *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 2022 WL 551221, at *13 (E.D. Mich. Feb. 23, 2022) (same), *aff'd*, 65 F.4th 851 (6th Cir. 2023), *cert denied sub nom. Lloyd v. Ford Motor Co.*, 144 S. Ct. 332 (2023); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369, at *27 (same).  Accordingly, under the plain language of Section 32919(b), Plaintiffs' claims are expressly preempted by federal law and should be dismissed with prejudice.

## 2.    Plaintiffs' Claims are Also Impliedly Preempted as a Matter of Law

Plaintiffs' claims are also preempted under principles of conflict preemption, which bar such claims when they "stand[] as an obstacle to the accomplishment of the full purposes and objectives of Congress."  *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984).  State law claims that encroach upon a federal "comprehensive scheme" to enforce "statutory objectives" are ***impliedly preempted***.  *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001).

Here, Congress established a comprehensive federal framework by which consumers can compare vehicles across manufacturers, including Tesla, based upon fuel economy and EV range information derived from uniform, federally approved standards.  *See* 49 U.S.C. §§ 32904(a), 32908(g).  The EPA requires manufacturers to test the EV range of electric vehicles, to provide calculations to the EPA for approval, and to disclose those EPA-approved estimates.  49 U.S.C. §§ 32902, 32904, 32908.  Manufacturers have an obligation to submit truthful testing information to the EPA, and the EPA may take corrective or punitive action if that information is incomplete or false.  40 C.F.R.§ 1066.2.  In furtherance of this pervasive federal scheme, the FTC has adopted directives that require manufacturers, including Tesla, to generate EPA fuel economy and EV range estimates and use them in any advertising referring to fuel economy and EV range performance.  16 C.F.R. § 259.4(l)(1).  The FTC's advertising requirements and the EPA's explicit testing/labeling requirements together establish a comprehensive federal regulatory scheme to provide consumers with consistent and comparable fuel economy and EV range information.  Plaintiffs would have that entire framework upended based on their allegations here.

The EPA's website explains that "[t]he EPA estimates, including EV range, are meant to be a general guideline for consumers when comparing vehicles.  Just like 'your mileage may vary' for gasoline vehicles, your range will vary for EVs.  In particular, factors like cold weather, accessory use (such as A/C), and high-speed driving can lower your vehicle's range significantly."[9] The purpose of EPA estimates is *not* to provide consumers with a guaranteed range, but instead to help consumers *compare* EV range estimates for competitor vehicles "in an apples-to-apples

---

[9]   *Electric & Plug-In Hybrid Electric Vehicles*, EPA, https://www.epa.gov/greenvehicles/electric-plug-hybrid-electric-vehicles (Oct. 10, 2023).

way."[10]  Moreover, requiring Tesla to provide different range estimates based on "temperatures" or other information about the range estimates, as Plaintiffs allege, Compl. ¶¶ 1, 50, would frustrate the congressional intent to establish uniform testing and labeling standards nationwide.

Indeed, in June 2024, when faced with copycat allegations to those alleged here, the United States District Court for the Central District of California in *Reynolds v. Tesla, Inc.*, No. 23-cv-09665, recognized that "[t]he EPA and the FTC have created a comprehensive regulatory framework relating to the testing of vehicles for mileage and EV range."  Wolkoff Decl., <u>Ex. 27</u> (*Reynolds* Order) at 2.  That court further held that "the gravamen of Plaintiff's claims lies in his disagreement with the EPA-approved mileage range and its failure to capture common 'real world' conditions . . . Claims that merely attack the insufficiency of EPA estimates are expressly preempted by the EPCA," and that since "Plaintiff's [state law] claims relating to Tesla's range-related advertisements and marketing materials" did precisely that, they were "preempted by the EPCA."  *Id.* at 2, 6-7.  There is no legitimate reason for a different result here.

There are substantial remedies available to the government if companies do not follow these uniform federal standards.  Federal agencies have significant enforcement authority to police fraud or other misstatements by vehicle manufacturers and to ensure consistency with respect to driving range estimates.   The EPA has the power to reject testing data submitted by each manufacturer. 40 C.F.R. § 600.008(c).  The EPA also has substantial enforcement powers to address issues related to a vehicle manufacturer's reporting of its vehicles' estimated range, including imposing civil and criminal penalties.  49 U.S.C. §§ 32911(b), 32912; 40 C.F.R. § 1066.2(b) (citing 18 U.S.C. § 1001 and 42 U.S.C. § 7413(c)(2)).  Likewise, the FTC has authority

---

[10]   *Learn More about the Fuel Economy Label*, EPA, https://www.epa.gov/greenvehicles/learn-more-about-fuel-economy-label-text-only.

to take corrective action as to misrepresentation regarding the fuel economy or driving range of a vehicle. 16 C.F.R. § 259.4(a), § 1.5.

Put simply, it is the province of the EPA and FTC—not state law or individual plaintiffs— to address the alleged issues concerning Tesla's battery range estimates.  Plaintiffs' claims are conflict-preempted because they stand as an obstacle to the accomplishment and execution of the comprehensive federal regime that governs.

### 3.    Plaintiffs' Allegations of Vehicle Ranges Are About EPA Ranges and Are Preempted as a Matter of Law

Plaintiffs' allegations about Tesla's actions—for which they improperly seek to hold Musk individually liable—focus on the estimates provided on Tesla's website at the time they placed their vehicle orders.[11]  Plaintiffs allege that the ranges were inaccurate because, due to various "real-world" driving conditions, such as outdoor temperatures, their vehicles sometimes provide less range than Tesla purportedly advertised on its website. *See, e.g.,* Compl. ¶¶ 34-35, 50.  But *the range estimates that were listed on the Tesla website were EPA ranges*.  The Complaint does not (and cannot) allege otherwise.

Instead, the Complaint merely suggests that it was somehow unclear whether the range estimates contained on Tesla's website were EPA estimates, selectively includes undated screenshots allegedly taken from Tesla's website, and even cites to the FTC's requirements that preempt their claim.  *See  id.* ¶ 35-37.  Unlike the *undated* screenshots that Plaintiffs include in their Complaint, each of the order pages for the vehicles Plaintiffs respectively purchased, on or

---

[11]    While the Complaint suggests that Musk made statements about vehicle ranges, they do not allege that he referenced range figures different than the approved EPA estimates, and it is only the EPA ranges advertised at the point of purchase on Tesla's website that allegedly caused Plaintiffs to make their purchases.  *Compare, e.g.*, Compl. ¶¶ 34 ("false range figure is the *first thing* a consumer was presented with at the point of purchase"), 102 (had plaintiff known that Tesla's "advertised ranges were exaggerated" they would not have purchased the vehicles or paid less for them), 72-79 (plaintiffs' harm caused by "advertised ranges") *with* ¶ 41 ("Musk's numerous false claims about Tesla driving ranges . . . confirm that he manipulated Tesla to fraudulently overstate vehicle ranges").

about the date of their order, specifically noted that the estimates were EPA estimates.  *See* Wolkoff Decl. Exs. 1, 4, 7, 10, 12, 14, 16-17, 20 (Tesla website order pages).  Tesla also provided Monroney labels listing EPA ranges, which corresponded to the EPA ranges on its website at or around the time Plaintiffs ordered their respective vehicles.  *Compare id. with* Gough MTD Aff., Exs. A-I.  Those labels specifically provide that "[a]ctual results will vary for many reasons, including driving conditions."  Gough MTD Aff. ¶¶ 4-11; *see also id.*, Exs. A-I.

To the extent that Plaintiffs contend Musk is liable because Tesla somehow had an obligation to disclose as part of the EPA estimates that "normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles," *e.g.*, Compl. ¶¶ 97, 111, (which Tesla did, and does) they are improperly seeking to impose obligations on Tesla *different from* what the federal regulatory scheme requires.  ***Preemption prevents this***.  And Plaintiffs' allegations are baseless.  For example, Plaintiffs cite as an exemplar Porsche's website, which purportedly "links to an entirely separate page of warnings about range, including the impact of cold weather."  *Id.* ¶ 52.  Tesla's website includes a "Range Tips" page that also notes the effects of temperature on driving range.  *See* Wolkoff Decl. Exs. 3, 6, 9, 11, 13, 15, 19, 21 (Tesla website "Range Tips" pages)

Moreover, Plaintiffs' allegations regarding the in-vehicle range displays are just another preempted effort to challenge EPA estimates.  Plaintiffs do not dispute that, as Tesla owner's manuals indicate, the displays are *also* based on EPA estimates.  *See* Wolkoff Decl. at ¶¶ 7, 10, 13, 28; *id.*, Exs. 2, 5, 8, 18 (Owner's Manuals) ("The driving range displayed . . . is an estimate of the remaining battery energy based on EPA-rated consumption.  It may not account for your personal driving patterns or external conditions.  The displayed range . . . may decrease faster than

the actual distance driven.").  Plaintiffs' cannot hold Musk personally liable for dashboard displays in Tesla vehicles that properly reflect the EPA range estimates.

## II.   THE COURT SHOULD DISMISS ANY REMAINING CLAIMS AGAINST MUSK UNDER RULE 12(B)(6)

To survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This requires "more than labels and conclusions, and a formulaic recitation of the elements . . . will not do." *Id.* at 555.  The court must disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." *In re Citigroup, Inc.*, 535 F.3d 45, 52 (1st Cir. 2008) (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'" under Fed. R. Civ. P. 8(a).  *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (alteration in original) (citation omitted).

When "alleging fraud," a complaint is subject to heightened pleading standards and "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The plaintiff must "allege with particularity the who, what, when, where, and how of the fraud."  *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 10 (1st Cir. 2016) (affirming dismissal).  These same particularity requirements "cover associated claims where the core allegations effectively charge fraud."  *N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009); *see e.g.*, *Mulder v. Koh's Dep't Stores, Inc.*, 865 F.3d 17, 21 (1st Cir. 2017) (applying Rule 9(b)'s particularity standard to M.G.L. c. 93A claims whose core allegations charged fraud).

### A.     Plaintiffs Have Failed to Sufficiently Allege Any Claims Against Musk

Plaintiffs bring each of their counts against Musk—thirteen consumer protection claims (Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XIV, XV, XVI), as well as three California statutory

14

claims (Counts XI, XII, and XIII), fraud (Count XVII), and unjust enrichment (Count XVIII). These claims rely on two sets of allegations: (1) that Musk and Tesla allegedly misled consumers as to EPA range estimates, including by purportedly omitting that temperature could affect range; and (2) that Tesla's EPA-based vehicle dashboard displays "misrepresented" driving ranges. *E.g.*, Compl. ¶ 97. As explained in Section I *supra*, to the extent Plaintiffs' allegations concern EPA range estimates they are preempted as a matter of law. In addition, because Plaintiffs insufficiently plead Musk's involvement with respect to *any* of these alleged Tesla actions, Plaintiffs' claims must be dismissed in their entirety. Further, Plaintiffs also failed to allege causation or reliance concerning in-vehicle displays. Finally, the Court should dismiss Plaintiffs' unjust enrichment claim (Count XVIII) for the additional, independent reason that Plaintiffs have an adequate remedy at law.

### 1.    Plaintiffs' Allegations of Musk's Involvement with Tesla's Website and Range Displays Are Insufficient to Plausibly State Any Claim

As Plaintiffs recognize, to hold Musk liable in his individual capacity for Tesla's alleged actions—either for its website or its vehicle displays—they must plausibly plead that he actively participated in those actions. Compl. ¶ 3. They do not. And Plaintiffs cannot overcome this requirement with naked, conclusory assertions that Musk purportedly "directed" Tesla to take those actions. Mere "labels and conclusions," *Twombly*, 550 U.S. at 555*,* and "bald assertions," *In re Citigroup, Inc.*, 535 F.3d at 52, are not sufficient to state a claim. Plaintiffs must plead "enough factual matter" to make their (convenient) conclusion actually plausible. *Twombly*, 550 U.S. at 556. Moreover, this pleading requirement is **heightened** here, given that Plaintiffs allege that the website and supposed dashboard display "manipulation" were fraudulent, activating Rule 9(b)'s heightened pleading requirement for nearly all their claims. Indeed, Plaintiffs must plead— beyond their conclusory statement that Musk directed Tesla—actual, particularized facts to

support Musk's involvement in connection with these specific actions, detailing "with particularity the who, what, when, where, and how." *D'Agostino*, 845 F.3d at 10.  They have fatally failed to do so.

**_First_**, as discussed in Section I.A.3. *supra,* Plaintiffs' claims concerning advertised driving ranges are based on the EPA ranges on **_Tesla's_** website.  *E.g.*, Compl. ¶¶ 34, 72-79, 12.  Plaintiffs assert, in barren conclusory fashion, that this allegedly "false" website advertising occurred at Musk's direction.  *See, e.g., id.* ¶¶ 34-35, 50.  In an attempt to clothe their naked assertion, Plaintiffs suggest that Musk made public statements about vehicle ranges that were also supposedly inaccurate, somehow "confirm[ing] that he manipulated Tesla."[12]  *Id.* ¶ 41.  But Plaintiffs are several steps away from plausibly pleading that Musk directed the content of Tesla's website.  And, as for pleading with particularity, they fail entirely to allege how, where, and when Musk's public statements were transfigured into directions to Tesla about what to include on its website.  And of course, even if they had sufficiently alleged such a connection, Plaintiffs still do not explain how Musk's actions could be fraudulent in light of the federal regulations mandating the disclosure of EPA ranges.

**_Second_**, Plaintiffs' claims concerning Tesla's vehicle display are ultimately claims that **_Tesla's_** vehicle display "misrepresented driving ranges," *id.* ¶ 7, because they allege, without support, that "**_Tesla programmers_** rigged the cars' range-estimating software."  *Id.* ¶ 49 (emphasis added).  Plaintiffs cannot meet their pleading requirements with the unsupported, conclusory

---

[12]  Plaintiffs' allegations concerning Musk's public statement are also misleadingly edited.  For example, Plaintiffs allege that when Musk introduced the Model Y in 2019, he stated an "actual true useable range," but omit the beginning of his sentence:  "***So we expect to have an EPA range*** . . . ."  Compl.  ¶ 43 (citing https://youtu.be/w3s1awGu1-M?si=O7eWU5A9x6LG9iD_&t=96).  Moreover, as for the Tesla "misrepresentations" that Plaintiffs claim Musk's "public statements" indicate he "ordered Tesla to make," *id.* ¶ 38, Plaintiffs' pleading grossly mischaracterizes their content.  Plaintiffs point to the "Freedom to Travel" map on Tesla's website, and claim that it "implies the Model S can make a trip from San Francisco to Los Angeles on a single charge."  *Id.* ¶ 39.  As is indicated in Plaintiffs' screenshot, this map "calculate[s] [a driver's] route ***with Superchargers along the way***" and is *not* an indication of how far a car can travel on a single charge.  *Id.* ¶ 38; *see also* https://www.tesla.com/trips (emphasis added).

assertion that Musk directed Tesla to do so.  *Id.* ¶¶ 7, 49, 52, 54, 56, 58, 88.  Plaintiffs merely cite

an article (and other tag along articles that cite the same article), in which reporters characterized

an *unnamed* source's *view* that Musk wanted "optimistic range projections" for Tesla vehicles.  *Id*.

¶ 7.  A general desire—based upon speculation from an unknown source in an article—however,

is not the same as a specific action.  And Plaintiffs do not plead any detail concerning when, where,

or how Musk's purported preference for optimistic projections resulted in him directing Tesla

engineers to somehow manipulate an algorithm based on the approved EPA range.   Such

threadbare, untethered allegations do not come close to the heightened pleading standard required

here.

        **2.**       **Plaintiffs' Allegations Concerning Range Displays Are Also Insufficient to Plausibly State a Claim Because They Do Not Support Reliance or Causation**

      Plaintiffs' allegations concerning the in-vehicle displays are preempted along with their

other claims relying upon EPA range estimates.  But even if the in-vehicle display allegations are

viewed in isolation from Plaintiffs' allegations about Tesla's website, they are also insufficient to

plausibly state claims for relief.   They do not support reliance and/or causation—necessary

elements for Plaintiffs' claims.

      For example, Plaintiffs plead fraud (Count XVII), which requires reliance.  Restatement

(Second) of Torts § 537 (1977) (requiring that a plaintiff "relie[d] on the misrepresentation in

acting or refraining from action" and that the reliance was "justifiable").  Likewise, reliance is an

element of Plaintiffs' California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, ("CLRA")

(Count XI), Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, ("UCL") (Count XII), and

False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*., ("FAL") (Count XIII) claims,

which also sound in fraud.  *See Fisher v. Monster Beverage Corp.*, 2013 WL 4804385, at *11

(C.D. Cal. July 9, 2013) ("When claims under the UCL, FAL, or CLRA sound in fraud, 'plaintiffs

are required to prove actual reliance on the allegedly deceptive or misleading statements, and that the misrepresentation was an immediate cause of the injury-producing conduct.'" (quoting *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793–94 (9th Cir. 2012))).  Plaintiffs' claims are centered on their decision to purchase Tesla vehicles.  Yet, Plaintiffs nowhere allege that they actually relied on the in-vehicle displays—which they indisputably did not see until ***after*** they received their vehicles—to make their purchases.  *See* Compl. ¶ 7 (consumers saw the range displays after they "turned on their cars"), ¶ 54 (that is, after "the point of purchase").  Given that Plaintiffs themselves allege that they did not see the in-vehicle displays until after they made their purchases, they could not have relied on them to make their purchases.

Further, Plaintiffs cannot use their in-vehicle display allegations to plausibly state causation for these and their fraud and consumer protection claims.  Restatement (Second) of Torts § 546 (1977) (requiring causation for fraud); *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011) (requiring economic injury as a result of the alleged UCL, FAL, or CLRA violation); *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1200 (N.D. Cal. 2014) (same for UCL and CLRA violations); *see e.g.*, *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 13 (1st Cir. 2017) (affirming dismissal of M.G.L. c. 93A claim when plaintiff failed to allege causation, in part, because plaintiff's theory that a price tag contained misrepresentations did not support causation when she plead that she saw the tag *after* the activity that allegedly injured her).  Plaintiffs' claimed harm was the purchase of their vehicles.  They fail to plausibly allege a causal connection between their purchases, and the in-vehicle dashboard displays that they encountered ***post***-purchase.

### 3.    Plaintiffs' Unjust Enrichment Claim Against Musk Also Should Be Dismissed Because Plaintiffs Have an Adequate Remedy at Law

It is black letter law that "a party with an adequate remedy at law cannot claim unjust enrichment."  *Shaulis.*, 865 F.3d at 16.  Plaintiffs, who seek damages, Compl. at 66, cannot bring

an unjust enrichment claim on behalf of themselves or others because they have adequate legal remedies: here, their consumer protection, California statutory, and fraud claims.  Although these claims are not viable because Plaintiffs failed to plead the legal requirements, that "is beside the point," and their unjust enrichment claim should be dismissed as a matter of law.  *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 84 (1st Cir. 2020) (affirming dismissal of unjust enrichment claim); *see also Mack v. Cultural Care Inc.*, 2020 WL 4673522, at *9 (D. Mass. Aug. 12, 2020) (dismissing unjust enrichment claim); *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 466 (D. Mass. 2018) (same).

## **<u>CONCLUSION</u>**

The Court should dismiss with prejudice the entire Complaint against Musk under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Date: August 5, 2024

Respectfully submitted,

/s/ *Aliki Sofis*
Aliki Sofis (BBO# 675777)
Eric D. Wolkoff (BBO# 679566)
Matthew Mazzotta (BBO# 679230)
Marla L. Blum (BBO# 708966)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
alikisofis@quinnemanuel.com
ericwolkoff@quinnemanuel.com
matthewmazzotta@quinnemanuel.com
marlablum@quinnemanuel.com

/s/ *Alex Spiro*
Alex Spiro (admitted *pro hac vice*)
Jesse Bernstein (admitted *pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
alexspiro@quinnemanuel.com
jessebernstein@quinnemanuel.com

*Counsel for Defendant Elon R. Musk*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was filed on August 5, 2024, through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  August 5, 2024                          /s/ *Aliki Sofis*
                                                              Aliki Sofis