## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHRIS WATKINS, ERIC DAY, GLOBAL LEASE GROUP INC., PRUDHVI SAMUDRALA, WILLIAM WILSON, KAREN KYUTUKYAN, RAJEEV TALREJA, GIORGIO PETRUZZIELLO, DREW TALREJA, KRIS NATHAN, EDUARD CHENETTE, WALID YASSIR, and VARSHA LUTHRA, on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>ELON R. MUSK, individually and in his capacity as Trustee of the ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003,<br><br>    *Defendants*. | Civil Action No. 1:24-cv-11384-PBS<br><br>**ORAL ARGUMENT REQUESTED** |

---

**DEFENDANT ELON R. MUSK'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<b><u>Page</u></b>

BACKGROUND ..................................................................................................2

    A.    The EPA Approves and Regulates the Range Estimates that
Manufacturers, Including Tesla, Must Provide with New Vehicles.....................2

    B.    Tesla and Musk Provided EPA-Approved Range Estimates...................................3

    C.    Tesla's In-Vehicle Displays .................................................................................5

I.      THE COURT SHOULD DISMISS ALL CLAIMS UNDER RULE 12(B)(1)
BECAUSE OF PREEMPTION AND LACK OF STANDING .........................................6

    A.    Plaintiffs' Challenges to EPA-Approved Range Estimates Are Preempted
as a Matter of Law ................................................................................................7

           1.    Plaintiffs' Attacks on EPA-Approved Range Estimates Are
Preempted .........................................................................................9

           2.    Plaintiffs Lack a Basis for Challenging Tesla's May 2021 Model 3
Webpages That Provided EPA-Approved Estimated Ranges, and
Their Associated Claims are Preempted ....................................................10

           3.    Plaintiffs Lack a Basis for Challenging Statements in Which Musk
Referenced EPA-Approved Estimates, and Their Associated
Claims are Preempted ........................................................................11

    B.    All Plaintiffs' Claims Should Be Dismissed For Lack of Standing Because
They Fail To Show Causation...............................................................................12

           1.    All Plaintiffs Fail to Show Causation .......................................................12

           2.    Plaintiff Luthra Has Not Suffered an Injury in Fact .................................14

II.    THE COURT SHOULD DISMISS ANY REMAINING CLAIMS UNDER
RULE 12(B)(6) ......................................................................................................14

    A.    Plaintiffs Have Failed to Sufficiently Allege *Any* Claims Against Musk..............15

           1.    Plaintiffs' Allegations Concerning Musk's Statements Fail to
Plausibly State Any Claim ........................................................................15

           2.    Plaintiffs' Allegations of Musk's Involvement with Tesla's
Website and Range Displays Are Insufficient to Plausibly State
Any Claim ...............................................................................................17

           3.    Plaintiffs' Allegations About Specific Statements and Range
Displays Do Not Support Reliance or Causation......................................19

           4.    Plaintiffs Have an Adequate Remedy at Law ...........................................20

CONCLUSION.....................................................................................................20

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................14, 17

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001).....................................................................................................8

*In re Citigroup, Inc.*,
  535 F.3d 45 (1st Cir. 2008)..........................................................................14, 17

*D'Agostino v. ev3, Inc.*,
  845 F.3d 1 (1st Cir. 2016)............................................................................15, 18

*Doane v. Benefytt Techs., Inc.*,
  2023 WL 2465628 (D. Mass. Mar. 10, 2023).........................................................17

*Downing/Salt Pond Partners, L.P. v. Rhode Island & Providence Plantations*,
  643 F.3d 16 (1st Cir. 2011).....................................................................................13

*Fisher v. Monster Beverage Corp.*,
  2013 WL 4804385 (C.D. Cal. July 9, 2013)...........................................................19

*FMC Corp. v. Holliday*,
  498 U.S. 52 (1990).....................................................................................................7

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs.
  Litig.*, 65 F.4th 851 (6th Cir. 2023), *cert. denied sub nom. Lloyd v. Ford Motor
  Co.*, 144 S. Ct. 332 (2023)..........................................................................................7

*Gill v. United States*,
  471 F.3d 204 (1st Cir. 2006).......................................................................................6

*Hallmark Inst. of Photography, Inc. v. CollegeBound Network, LLC*,
  518 F. Supp. 2d 328 (D. Mass. Oct. 29, 2007) .....................................................17

*Katz v. Pershing*,
  LLC, 672 F.3d 64 (1st Cir. 2012) ..........................................................12, 13, 14

*Kline & Co. v. MCI Commc'ns, Corp.*,
  98 F. Supp. 2d 69 (D. Mass. 2000) ...........................................................................7

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011)...............................................................................................20

ii

*Merlonghi v. United States*,
    620 F.3d 50 (1st Cir. 2010).............................................................................6

*Moore v. Apple, Inc.*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) .........................................................20

*Murphy v. Bernier*,
    2024 U.S. Dist. LEXIS 97015 (D. Mass. May 31, 2024) ............................14

*Murphy v. United States*,
    45 F.3d 520 (1st Cir. 1995)...........................................................................6

*N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*,
    567 F.3d 8 (1st Cir. 2009)...........................................................................15

*O'Shea v. Littleton*,
    414 U.S. 488 (1974).....................................................................................12

*Pitta v. Medeiros*,
    90 F.4th 11 (1st Cir. 2024)..........................................................................15

*Powers v. Ohio*,
    499 U.S. 400 (1991).....................................................................................14

*Presti v. Toyota Motor Sales U.S.A*,
    2018 WL 792035 (D. Mass. Feb. 8, 2018) ............................................15, 16

*Project Veritas Action Fund v. Conley*,
    270 F. Supp. 3d 337 (D. Mass. 2017) .......................................................6, 13

*Reynolds v. Tesla, Inc.*,
    No. 23-cv-09665 .........................................................................................10

*Rymes Heating Oils, Inc. v. Springfield Terminal R. Co.*,
    358 F.3d 82 (1st Cir. 2004)...........................................................................7

*Sasso v. Tesla, Inc.*,
    584 F. Supp. 3d 60 (E.D.N.C. 2022)...........................................................14

*Shaulis v. Nordstrom, Inc.*,
    865 F.3d 1 (1st Cir. 2017)...........................................................................20

*Tomasella v. Nestlé USA, Inc.*,
    962 F.3d 60 (1st Cir. 2020).........................................................................20

*Valley Children's Hospital v. Athenahealth, Inc.*,
    2023 WL 6065800 (D. Mass. Sept. 18, 2023) ............................................17

## Constitution

U.S. Const. art. VI, cl. 2 ..................................................................................................7

## Statutes and Regulations

49 U.S.C. § 32902 ...........................................................................................................8

49 U.S.C. §32904 ............................................................................................................8

49 U.S.C. §32908 ............................................................................................................8

49 U.S.C. § 32904(a) .......................................................................................................8

49 U.S.C. § 32908(g) .......................................................................................................8

49 U.S.C. § 32908(b)(1) ...............................................................................................2, 7

Energy Policy and Conservation Act of 1975 ..................................................2, 7, 8, 10

40 C.F.R. § 600.210-12 ...............................................................................................2, 3, 8

40 C.F.R. § 600.310-12(b)(6) .........................................................................................7

40 C.F.R. § 1066.2 ...........................................................................................................9

71 Fed. Reg. 77872, 77874 (Dec. 27, 2006) ...............................................................3, 8

76 Fed. Reg. 39478, 39505 (July 6, 2011) ......................................................................3

## Rules

Fed. R. Civ. P. 9(b) ..........................................................................................2, 15, 18, 19

Fed. R. Civ. P. 12(b)(1) ...........................................................................................2, 6, 20

Fed. R. Civ. P. 12(b)(6) .........................................................................................2, 14, 20

## Other Authorities

*Your Mileage Will Vary*, EPA,
   https://www.fueleconomy.gov/feg/why_differ.shtml ................................................3

Restatement (Second) of Torts § 537 (1977) ................................................................19

Restatement (Second) of Torts § 546 (1977) ................................................................19

Plaintiffs are purchasers of vehicles made by Tesla, Inc. ("Tesla") who allege that they and others were purportedly induced to purchase Tesla vehicles based upon exaggerated driving ranges.  Although Tesla's alleged actions are at the center of this case, Plaintiffs did **not** name Tesla as a defendant in either the original or amended complaint.  Instead, they bring their claims—for violations of various state consumer protection statutes, fraud, and unjust enrichment—solely against Tesla's CEO, Elon Musk, in his individual capacity, as well as in his capacity as Trustee of the Trust that allegedly holds his Tesla stock.[1]

Plaintiffs' failure to name Tesla is **not** an oversight.  ***The Amended Complaint is merely a dressed-up, copycat action that seeks to avoid the consequences of cases already filed and well underway in California state and federal courts against Tesla, based on the same core factual allegations and legal claims***.  As detailed in Musk's concurrently filed Motion to Compel Arbitration, months before *this* action was filed, a federal court in California compelled arbitration in two cases based on arbitration agreements with Tesla identical to the ones at issue here.[2] Plaintiffs seek to avoid this outcome by opportunistically (and implausibly) pleading their claims against Musk directly.  This Court should dismiss with prejudice the claims against Musk for at least two reasons:

<u>***First***</u>, Plaintiffs' claims concern range estimates that are regulated by the EPA and FTC. ***But a federal court in California has <u>already dismissed</u> claims based on such allegations against Tesla in <u>three separate lawsuits</u> because federal law <u>preempts</u> claims concerning EPA ranges***.[3]

---

[1]   Defendant Elon Musk, in his capacity as Trustee of the Elon Musk Revocable Trust Dated July 22, 2003, moves this Court separately and concurrently to dismiss the claims against him as Trustee for lack of personal jurisdiction and, alternatively, failure to state a claim.

[2]   As explained in the Motion to Compel Arbitration or Stay, this Court should do the same given the valid arbitration agreements' application to the claims and Musk's ability to enforce them against the Plaintiffs.

[3]   Decl. of Eric Wolkoff in Supp. of Def. Elon R. Musk's Mot. to Compel Arbitration and Mot. to Dismiss ("Wolkoff Decl."), Ex. 4 (*Reynolds* Order), Ex. 5 (*Karunatilaka* Order); Ex. 6 (*Flores* Order).

This Court should follow those rulings and dismiss with prejudice Plaintiffs' preempted claims pursuant to Fed. R. Civ. P. 12(b)(1).  Additionally, Plaintiffs lack standing to pursue their claims because they fail to allege any causal link between the alleged statements by Tesla or Musk and their vehicle purchases.

***Second***, Plaintiffs fatally fail to plausibly plead that any of Musk's own alleged statements were false, unfair, deceptive, or otherwise unlawful.  They also fail to plead even Musk's personal involvement concerning Tesla's statements regarding EPA vehicle ranges or alleged manipulation of in-vehicle displays—let alone with the particularity Fed. R. Civ. P. 9(b) requires.  The gravamen of Plaintiffs' claims appears to be that because Musk is Tesla's CEO, that "must" mean he directed some sort of effort by Tesla to purposefully exaggerate EPA driving ranges.  These allegations are flawed, conclusory, and not sufficient to support Musk's individual liability.  Plaintiffs' claims therefore should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

### A.    The EPA Approves and Regulates the Range Estimates that Manufacturers, Including Tesla, Must Provide with New Vehicles

The testing and disclosure of estimated fuel economy and electric vehicle ("EV") ranges, for new vehicles sold in the United States are governed by a comprehensive federal regulatory scheme that Congress developed through the Energy Policy and Conservation Act of 1975 ("EPCA").  The EPA and the FTC administer this regulatory scheme.

Under EPA regulations, every new vehicle sold in the United States must disclose fuel economy or EV range estimates through a "Monroney" label.  49 U.S.C. § 32908(b)(1).  The EPA has set forth an approved process for calculating these fuel economy and EV range estimates. 40 C.F.R. § 600.210-12.  The EPA fuel economy estimates "are a useful tool for comparing the fuel economies of different vehicles but may not accurately predict the average [range or MPG]

*you* will get."[4]   Indeed, the EPA expressly acknowledges that a vehicle's fuel economy and EV range "will vary," *id.*, and its required range estimates are not "perfect" figures intended to predict the performance of each vehicle for each driver under all conditions.   71 Fed. Reg. at 77874; *see also* 76 Fed. Reg. 39478, 39505 (July 6, 2011).   As the EPA guidance makes clear, they are **estimates**, not guarantees.

### B.      Tesla and Musk Provided EPA-Approved Range Estimates

Plaintiffs seek to represent a sweeping class "of all persons in the United States who purchased or leased a new or used Tesla."   Am. Compl. ¶ 135 (Dkt. No. 40).   Their Amended Complaint alleges a correspondingly broad claim that Musk purportedly "misrepresent[ed]" the "advertised ranges" of Tesla vehicles, including by providing purportedly exaggerated ranges and by supposedly omitting that normal temperature fluctuations could affect driving range.   *See, e.g.*, *id.* ¶ 121, 151.   However, Plaintiffs do not plead a unifying theory about how the ranges of *Plaintiffs'* Tesla models were purportedly exaggerated—let alone as to all Tesla vehicles.   Rather, Plaintiffs' Amended Complaint is primarily about ticky-tacky gripes with model- and date-specific statements.   *Id.* ¶¶ 48-52, 54-55, 57-59, 63-68, 70, 91-93, 97-98, 100-02, 104.

There is a reason for this mismatch between the scope of Plaintiffs' claims and their allegations.   Plaintiffs were not misled at all.   Their real complaint is that Tesla used mandated EPA estimates rather than some undefined alternative calculation of "actual" range to account for "real world" conditions or the impact of weather.   But such state law claims are flawed as a matter of law.   They were already dismissed against Tesla in three other lawsuits because they are preempted by federal law concerning EPA ranges, which require manufacturers to utilize an EPA approved formula for estimating range.   *See* Wolkoff Decl., Ex. 4 (*Reynolds* Order), Ex. 5

---

[4]   *Your Mileage Will Vary*, EPA, https://www.fueleconomy.gov/feg/why_differ.shtml (last visited Aug. 4, 2024).

(*Karunatilaka* Order), Ex. 6 (*Flores* Order).

Preemption also prevents claims that purport to add requirements beyond those in the EPA regulations, such as Plaintiffs' allegations that Tesla somehow erred by not providing an alternative estimated range or more information detailing how "real world" driving conditions, like temperature, could affect a vehicles' range.  *See, e.g.*, Am. Compl. ¶¶ 9, 97-98. 100-02, 104. Nevertheless, Tesla includes an entire page on its website that discusses the effect of cold weather on vehicle ranges.  Wolkoff Decl. Exs. 13-22.  And Tesla provides "Monroney" labels with EPA estimates" that explain "[a]ctual results will vary for many reasons, including driving conditions."[5]

Attempting to sidestep their incurable preemption problems, the Amended Complaint asserts, in part, that Musk made statements about vehicle ranges "untethered to EPA estimates." Am. Compl. ¶ 46.  Related allegations include alleged statements by Musk about or referencing Tesla vehicle ranges.  *Id.* ¶¶ 48-52, 54-55, 57-59.  In addition, despite suing Musk in his *individual capacity*, Plaintiffs include numerous screenshots from *Tesla's* website and social media.[6]  *E.g.*, *Id.* ¶¶ 63-68, 70.  Plaintiffs do not allege that the ranges in these statements were **not** EPA estimates; instead, often their shrunken assertion is that Musk and Tesla did not always expressly say "EPA est." on every webpage or post that displayed an EPA estimated range.  For many, if not all, of the challenged statements, that assertion is simply inaccurate.  *See id.* ¶¶ 49, 55, 58.

Moreover, Plaintiffs' allegations only focus on cherry-picked alleged statements, but a simple review of their ordering paperwork demonstrates that the models and dates at issue fail to

---

[5]   *See* Aff. of Jake Gough in Supp. of Def. Elon R. Musk's Mot. to Compel and Mot. to Dismiss ("Gough Aff.") ¶¶ 23-35, Exs. S-HH.

[6]   Plaintiffs seek to somehow hold Musk individually liable for Tesla advertisements and actions that they challenge. Plaintiffs acknowledge that to sue Musk individually they must plead that he directed Tesla's actions that they claim caused them harm.  Am. Compl. ¶ 3.  They (unsuccessfully) attempt to bridge the chasm between Tesla's actions and Musk's individual liability by packing their Complaint with allegations about Musk's so-called power and influence at Tesla.  These allegations, though salacious and made for media, are unrelated to the alleged Tesla conduct actually at issue.

correspond with the named Plaintiffs' actual vehicle purchases.  *See* Gough Aff. ¶¶ 7-19  Tellingly, Plaintiffs never actually state in their 364 paragraph Amended Complaint the most basic information: the Tesla models they purchased or statements about their vehicles they reviewed.

### C.      Tesla's In-Vehicle Displays

Plaintiffs further claim that after their purchases, they were subjected to "misrepresented" range estimates on their in-vehicle displays, which display a range utilizing the EPA estimate on their vehicle dashboards.  *See e.g.*, *id*. ¶¶ 151; *see also* Wolkoff Decl. ¶¶ 12-17, Exs. 7-12.  They allege, only in conclusory fashion, that Musk purportedly directed Tesla to manipulate the in-vehicle range displays.  *Id.* ¶¶ 11, 78, 81-82, 84.

## ARGUMENT

Plaintiffs' claims hinge entirely on (1) alleged statements by Musk, *id.* ¶¶ 48-52, 54-55, 57-59, and Tesla, *id.* ¶¶ 63-68, 70, 91-93, 97-98, 100-02, 104; and (2) Tesla in-vehicle displays, *id.* 78, 81-82, 84.  These allegations are insufficient to support the Court's exercise of subject matter jurisdiction or the plausibility of Plaintiffs' claims.

The vast majority of Tesla's and Musk's alleged statements do not support the Court's jurisdiction over Plaintiffs' claims because they concern nothing more than EPA-approved estimated ranges, and Plaintiffs' challenges are, therefore, ***preempted***.  Moreover, all of Plaintiffs' allegations are insufficient to show causation, which is required for Plaintiffs to have standing to bring their claims, because they concern: (1) statements that do not correspond with the specific vehicles that Plaintiffs actually purchased, (2) statements that lack a sufficient connection to the actual defendant—Musk, and/or (3) in-vehicle displays that Plaintiffs did not see until *after* they purchased their vehicles.  Plaintiff Varsha Luthra further lacks standing because she did not actually purchase a Tesla vehicle, and therefore has not suffered any injury in fact.

Plaintiffs' allegations are also insufficient to plausibly state a claim for relief. Plaintiffs fail to sufficiently plead that *Musk's* alleged statements contained actionable information. They also fail to plead that Musk was an active participant in Tesla's actions and statements such that he may be held individually liable for them (he cannot be). Further, the challenged statements— whether by Musk or Tesla—do not even correspond to Plaintiffs' vehicle purchases, and the allegations concerning Tesla's in-vehicle displays are not only insufficient to show the causation required for standing, but they are also insufficient to plead the causation and reliance elements for many of Plaintiffs' claims. Finally, Plaintiffs' unjust enrichment claim fails because Plaintiffs have adequate (though unavailing) remedies at law.

## I.      THE COURT SHOULD DISMISS ALL CLAIMS UNDER RULE 12(B)(1) BECAUSE OF PREEMPTION AND LACK OF STANDING

When a defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), it triggers a burden for the plaintiff to prove that jurisdiction exists. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (citation omitted). The court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). The court "may also consider other materials in the district court record, including where those materials contradict the allegations in the complaint." *Project Veritas Action Fund v. Conley*, 270 F. Supp. 3d 337, 340 (D. Mass. 2017); *see also Merlonghi*, 620 F.3d at 54. If a defendant brings motions under "both Rules 12(b)(1) and 12(b)(6)" then the court should "ordinarily" decide the 12(b)(1) motion first. *Gill v. United States*, 471 F.3d 204, 206 n.3 (1st Cir. 2006) (citation omitted).

Here, Plaintiffs cannot maintain their claims based on the core of their allegations because they are preempted. Alternatively, most Plaintiffs lack standing to assert their claims at all.

**A.    Plaintiffs' Challenges to EPA-Approved Range Estimates Are Preempted as a Matter of Law**

Plaintiffs' claims relying on allegations that challenge the advertising of EPA-approved range estimates must be dismissed because they are ***preempted*** by the authority Congress granted to the EPA and FTC, and such preemption negates the Court's subject matter jurisdiction as a matter of law.  *See* Wolkoff Decl., Ex. 4 (*Reynolds* Order) at 6-7 (dismissing nearly identical claims against Tesla regarding statements on website as preempted and citing *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 862-63 (6th Cir. 2023), *cert. denied sub nom. Lloyd v. Ford Motor Co.*, 144 S. Ct. 332 (2023)).[7]  It is black letter law, pursuant to the Supremacy Clause of the Constitution, that any state law conflicting with federal law is preempted and without effect.  U.S. Const. art. VI, cl. 2. "In determining whether federal law pre-empts a state statute, we look to congressional intent.  Pre-emption may be either express or implied, and is compelled whether Congress's command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *FMC Corp. v. Holliday*, 498 U.S. 52, 56–57 (1990) (citation omitted).  Plaintiffs' claims here are both expressly and impliedly preempted.

The EPCA, as administered by the EPA, governs the testing and disclosure of estimated fuel economy and electric vehicle ("EV") ranges for new vehicles sold in the United States.  Under the EPA's regulations, every new vehicle sold in the United States must disclose fuel economy or EV range estimates through a "Monroney" label or window sticker.  49 U.S.C. § 32908(b)(1); *see also* 40 C.F.R. § 600.310-12(b)(6) (discussing disclosure of driving range).  There is an EPA-

---

[7]  *Id.*, Exs. 5 (*Karunatilaka* Order) and 6 (*Flores* Order); *see also Kline & Co. v. MCI Commc'ns, Corp.*, 98 F. Supp. 2d 69, 72 (D. Mass. 2000) (holding that challenge under filed-rate doctrine must be heard by Federal Communications Commission ("FCC")); *Rymes Heating Oils, Inc. v. Springfield Terminal R. Co.*, 358 F.3d 82, 90 (1st Cir. 2004) (dismissing claim where "primary jurisdiction" is vested in an agency).

approved process for calculating these fuel economy and EV range estimates, which permit comparisons between different vehicles based on a common certification process. *See* 40 C.F.R. § 600.210-12; Fuel Economy Labeling of Motor Vehicles: Revisions to Improve Calculation of Fuel Economy Estimates, 71 Fed. Reg. 77872, 77874 (Dec. 27, 2006) ("We believe the new fuel economy estimates will provide car buyers with useful information when comparing the fuel economy of different vehicles.").

This comprehensive federal regulatory scheme, set forth in the EPCA by Congress, indisputably governs the advertising of vehicle ranges and preempts any conflicting state law. Indeed, the EPCA contains an express preemption provision stating: "a State or a political subdivision of a State may adopt or enforce a law or regulation on disclosure of fuel economy or fuel operating costs for an automobile covered by [49 U.S.C.] section 32908 only if the law or regulation is identical to that requirement." *Id*. Accordingly, no state law can obligate a vehicle manufacturer, such as Tesla, to comply with any requirement pertaining to the disclosure of a vehicle's fuel economy or range unless Section 32908 already imposes an identical requirement.

Similarly, under the doctrine of implied preemption, state law claims, such as Plaintiffs' here, which encroach upon a federal "comprehensive scheme" to enforce "statutory objectives," are impliedly preempted. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001). Congress established a comprehensive federal scheme for consumers to be able to compare vehicles across manufacturers based upon fuel economy and EV range information derived from uniform, federally approved standards. *See* 49 U.S.C. §§ 32904(a), 32908(g). The EPA requires manufacturers to test the EV range of electric vehicles, to provide calculations to the EPA for approval, and to disclose those EPA-approved estimates. 49 U.S.C. §§ 32902, 32904, 32908.

Manufacturers have an obligation to submit truthful testing information to the EPA, and the EPA may take corrective or punitive action if information is incomplete or false.  40 C.F.R. § 1066.2.

### 1.    Plaintiffs' Attacks on EPA-Approved Range Estimates Are Preempted

Plaintiffs' central claim is that the "advertised ranges" of their Tesla vehicles were purportedly inaccurate and that their vehicles had less actual range under varying and unspecified real world driving conditions.  *See* Am. Compl. ¶¶ 121-133, 151.  Plaintiffs then challenge certain Tesla materials and statements by Musk to allegedly support this claim.  But many of these challenged statements do no more than provide EPA-approved estimates, which are specifically identified as such throughout Tesla's materials.  Where the statements at issue simply relayed the EPA-approved estimates, Plaintiffs' claims based on those estimates differing from actual driving range are ***preempted***.  *Id.* ¶¶ 55, 57-58, 59, 91-92.

Similarly, to the extent that Plaintiffs contend Musk is liable because Tesla somehow had an obligation to disclose, as part of EPA-approved estimates, that "normal temperature fluctuations can dramatically reduce the driving ranges of Tesla vehicles," *e.g.*, *id.* ¶ 151, they are improperly seeking to impose obligations on Tesla *different from* what the federal regulatory scheme requires.  That ends the matter.  Nevertheless, Tesla also made such clear and unambiguous disclosure on its website, which addresses at length various "Range Tips" and discloses a list of factors that can impact their cars' ranges.  For example, it states, "When temperature drops, range can decrease due to extra energy demands on the battery."  Wolkoff Decl. Exs. 16, 18, 20; *see also id. id.* Ex. 12 (owner's manual explaining that "[e]nvironmental conditions such as cold or hot weather and wind" are among the factors that impact energy consumption while driving); *id.*. Ex. 19 (range tips page noting "[r]ange can be impacted by extreme cold or hot temperatures; however, the impact will seem more noticeable in cold weather.").

Indeed, in June 2024, when faced with a similar challenge that Tesla's stated EPA range allegedly differed from actual driving range, the United States District Court for the Central District of California in *Reynolds v. Tesla, Inc.*, No. 23-cv-09665, recognized that "[t]he EPA and the FTC have created a comprehensive regulatory framework relating to the testing of vehicles for mileage and EV range." Wolkoff Decl., Ex. 4 (*Reynolds* Order) at 2. That court further held that "the gravamen of Plaintiff's claims lies in his disagreement with the EPA-approved mileage range and its failure to capture common 'real world' conditions . . . Claims that merely attack the insufficiency of EPA estimates are expressly preempted by the EPCA," and that since "Plaintiff's [state law] claims relating to Tesla's range-related advertisements and marketing materials" did precisely that, they were therefore "***preempted*** by the EPCA." *Id.* at 2, 6-7 (emphasis added).[8]

### 2.   Plaintiffs Lack a Basis for Challenging Tesla's May 2021 Model 3 Webpages That Provided EPA-Approved Estimated Ranges, and Their Associated Claims are Preempted

Many of Plaintiffs' allegations concern a purported May 2021 version of Tesla's webpage for the Tesla Model 3 car. Am. Compl. ¶¶ 91-93, 97-98. However, this webpage plainly identified that the driving range at issue was an EPA estimate. Plaintiffs ***concede*** that outright: when listing a 353-mile driving range, the Amended Complaint admits that Tesla's website stated "'EPA Estimate'" at the top of the page. *Id.* ¶ 91. And, ***on the very same webpage***, Tesla provided the exact same 353 mile "estimated range." *Id.* ¶ 92. The webpage further noted the specific versions of the Tesla Model 3 that corresponded with various EPA estimates, including the 353-mile EPA estimate. Wolkoff Decl., Ex. 23. Plaintiffs' challenge is therefore ***preempted*** given that the webpage did not provide any actionable additional information about driving ranges. Plaintiffs'

---

[8]  In August 2024, the same court dismissed additional rounds of copycat claims in separate suits against Tesla. *See* Wolkoff Decl., Ex. 5 (*Karunatilaka* Order) at 2 (concluding that "Plaintiff's claims regarding Tesla's range-related advertisements and marketing materials are preempted by the EPCA"); *see also id.*, Ex. 6 (*Flores* Order) at 2.

efforts to point to the webpage's "[g]o anywhere" reference and map—which merely concern the location and prevalence of supercharger stations—are nothing other than a mischaracterization, at best. *See* Am. Compl. ¶ 92-93.[9]  Plaintiffs do not claim that the supercharger station information was inaccurate.[10]

Likewise, in the related order page for the Model 3, Tesla once again provided the same EPA estimated ranges. *Id.* ¶¶ 100-01.  Tesla further noted that longer range models provide "the best long-range driving experience in the coldest driving conditions" compared to other models. *See id.* ¶ 101-02.  The Amended Complaint does not allege this statement was inaccurate, and Tesla (and Musk) was not required to provide an estimate different than that provided by the EPA. As the Amended Complaint itself alleges, these EPA range estimates were disclosed. *Id.* ¶ 91. **_Preemption_ prevents these challenges**.[11]

> ### 3.    Plaintiffs Lack a Basis for Challenging Statements in Which Musk Referenced EPA-Approved Estimates, and Their Associated Claims are Preempted

Plaintiffs further claim that several of Musk's alleged statements are actionable because they are "untethered to any EPA estimate," despite the fact that the statements obviously refer to the EPA estimate, and are thus subject to preemption. *See id.* ¶ 45.  For example, Plaintiffs incorrectly claim that, in 2024, "Musk falsely tweeted that the Model 3 had a 363-mile actual

---

[9]  This is also true of the "Freedom to Travel" map on Tesla's website. *Id.* ¶¶ 70-71.  As Plaintiffs' own screenshot indicate, this map "calculate[s] [a driver's] route with Superchargers along the way" and is not an indication of how far a car can travel on a single charge. *Id.* ¶ 70; *see also* https://www.tesla.com/trips (emphasis added).

[10]  Plaintiffs' further efforts to attack this webpage are similarly preempted in that that they seek to improperly impose disclosure requirements on Tesla different from and in addition to what federal law requires.  Tesla was permitted to discuss: weather in relation to traction control rather than in relation to driving range, *id.* ¶ 97; and the vehicle's performance "in all weather conditions" without taking the opportunity to note the impact of weather specifically on range, *id.* ¶ 98.

[11]  Plaintiffs' allegations are also baseless.  For example, Plaintiffs praise Porsche's website, which purportedly "links to an entirely separate page of warnings about range, including the impact of cold weather." *Id.* ¶ 104.  Tesla's website includes a "Range Tips" page that discusses the effects of temperature on range.  *See* Wolkoff Decl. Exs. 13-22 (Tesla website "Range Tips" pages).

range." *Id.* ¶ 55.  They omit that this post on X—which did **not** state "actual range" anywhere—was a link to Tesla's webpage that stated at the top of the page "364 mi. Range (EPA est.)." Wolkoff Decl., <u>Ex. 24</u>.  Plaintiffs falsely claim that, in 2019, Musk described a Model Y as having "an actual true-usable range of 300 miles" during a presentation.  Am. Compl. ¶ 58.  Musk's full statement was, "[s]o *we expect to have an EPA range* of – an actual true usable range of 300 miles."[12]  Plaintiffs also include a 2020 post on X from Musk truthfully linking to a Consumer Reports article reporting the magazine's own results, with the caption "Model 3 achieves 350 mile actual range vs 310 *EPA sticker* in Consumer Reports testing."  *Id.* ¶ 49 (emphasis added).

### B.    All Plaintiffs' Claims Should Be Dismissed For Lack of Standing Because They Fail To Show Causation

All Plaintiffs lack standing to pursue their allegations against Musk because such allegations are not connected to their own Tesla purchases at all.  *See* Gough Aff. ¶¶ 7-19, <u>Exs. A-R</u>.  They do not link their allegations regarding Tesla's dashboard display range estimates to their purchases either.  *See* Am. Compl. ¶¶ 78-87.  Plaintiff Varsha Luthra lacks standing for an additional, independent reason—Luthra did not personally purchase a Tesla, and therefore has not suffered any injury in fact, as required.  These failures doom Plaintiffs' claims and those of their putative class.  *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

### 1.    All Plaintiffs Fail to Show Causation

To have Article III standing, Plaintiffs must show causation, that is, "a sufficiently direct causal connection between the challenged action and the identified harm."  *Katz v. Pershing*, LLC, 672 F.3d 64, 71 (1ˢᵗ Cir. 2012) (affirming dismissal).  Plaintiffs' alleged harm was the purchase of

---

[12]   Am. Compl.  ¶ 58 (citing https://youtu.be/w3s1awGu1-M?si=O7eWU5A9x6LG9iD_&t=96) (emphasis added).

their vehicles.  But Plaintiffs do not allege the actual models of the Tesla vehicles they purchased or what ranges were disclosed for their (unidentified) vehicles when they ordered them.  The reason for their failure to plead this essential information is clear when their allegations are examined: ***Plaintiffs did not purchase the particular Tesla products that are the subject of the statements they identify as allegedly problematic***.[13]  Fatally, they complain about advertisements associated with products they did not even buy and/or that were made *after* their purchases:

| Plaintiff | Model Type[14] | Order Date | Allegations |
|---|---|---|---|
| Watkins | Model Y Performance | Sept. 14, 2020 | N/A |
| Global Lease Group | Model Y Performance | May 17, 2023 | N/A |
| Petruzziello | Model 3 Long Range | Apr. 27, 2022 | N/A |
| Samudrala | Model 3 Standard Range Plus | Apr. 27, 2021 | N/A |
| Wilson | Model Y Long Range AWD | Mar. 6, 2021 | N/A |
| Kyutukyan | Model Y Performance | Nov. 26, 2021 | N/A |
| R. Talreja | Model 3 Standard Range Plus RWD | Mar. 10, 2020 | N/A |
| R. Talreja | Model X | Dec. 21, 2023 | N/A |
| D. Talreja | Model 3 Rear-Wheel Drive | May 28, 2022 | N/A |
| Day | Model X Long Range | Nov. 1, 2021 | N/A |
| Nathan | Model 3 Long Range AWD | Feb. 7, 2023 | N/A |
| Chenette | Model 3 Standard Range Plus RWD | May 11, 2019 | ¶ 68[15] |
| Chenette | Model Y Long Range AWD | May 21, 2021 | N/A |
| Chenette | Model Y Long Range Dual Motor AWD | May 13, 2024 | N/A |
| Walid Yassir | Model 3 Long Range Dual Motor AWD | July 10, 2018 | N/A |
| Varsha Luthra | Model Y Long Range Dual Motor AWD | Jan. 27, 2023 | N/A |

Plaintiffs' claims concerning in-vehicle displays also fail the traceability requirement for Article III standing.  Plaintiffs claim they were injured by the purchase of their vehicles.  *See* Am. Compl. 121-33.  But Plaintiffs indisputably did not see the dashboard displays of range estimates

---

[13]   With one exception, detailed further below in n.15 and Section II *infra*.

[14]   Gough Aff. ¶¶ 7-19, Exs. A-R (order and/or purchase agreements specifying the Tesla models that Plaintiffs ordered and their dates of order).  *See Project Veritas Action Fund*, 270 F. Supp. 3d at 340 ("In resolving a Rule 12(b)(1) motion, we may also consider other materials in the district court record. . . .") (*quoting Downing/Salt Pond Partners, L.P. v. Rhode Island & Providence Plantations*, 643 F.3d 16, 17 (1st Cir. 2011)).

[15]   There is one exception to this utter lack of correlation: Plaintiff Chennette's 2019 Model 3 purchase and ***Tesla, not Musk's*** 2019 post on X.  *See* Am. Compl. ¶ 68.  But this is indicative of a further causation defect: the lack of connection between *Tesla's* alleged actions and Musk.  As explained in further detail in Section II.A.2. *infra*, Plaintiffs do not plausibly plead that Musk himself directed the 2019 post or that he was even aware of it.

until *after* they received their vehicles and started driving them—there is no causal connection.  In addition, those claims are disconnected from Musk, for the reasons discussed in Section II *infra*.

### 2.    Plaintiff Luthra Has Not Suffered an Injury in Fact

A plaintiff must have suffered an injury in fact to have standing to pursue a claim.  *Katz*, 672 F.3d 64 at 71.  While a plaintiff may sometimes assert the legal rights of another person, that is possible only if, *inter alia*, "there 'exists some hindrance to the third party's ability to protect his or her own interests.'"  *Murphy v. Bernier*, 2024 U.S. Dist. LEXIS 97015, *10 (D. Mass. May 31, 2024) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)) (granting motion to dismiss); *see also Sasso v. Tesla, Inc.*, 584 F. Supp. 3d 60, 69 (E.D.N.C. 2022) (dismissing claims against Tesla because defendant sued over a car purchased on behalf of his business and as he "d[id] not own the car, he suffer[ed] no individual injury and thus lack[ed] standing").  Plaintiff Varsha Luthra alleges that she "purchased a Tesla with her husband in 2023."  Am. Compl. ¶¶ 24, 133.  However, Luthra was not the purchaser; the purchasers were Tauseef Butt and his business, Life Sensors, Inc.  Gough Aff. ¶ 19, Exs. P, Q, & R.  Luthra lacks an injury in fact sufficient to support standing, in addition to lacking causation.

## II.    THE COURT SHOULD DISMISS ANY REMAINING CLAIMS UNDER RULE 12(B)(6)

To survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[L]abels and conclusions, and a formulaic recitation of the elements . . . will not do."  *Id.* at 555.  The court must disregard "bald assertions, unsupportable conclusions, and opprobrious epithets."  *In re Citigroup, Inc.*, 535 F.3d 45, 52 (1st Cir. 2008) (citation omitted).  In assessing a Rule 12(b)(6) motion, the district court may properly consider "documents which are of undisputed authenticity, official public records, central to the plaintiff's claim, or sufficiently referred to in the complaint."

14

*See Pitta v. Medeiros*, 90 F.4th 11, 14 n. 2 (1st Cir. 2024) (citation omitted).

When "alleging fraud," a complaint is subject to heightened pleading standards and "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The plaintiff must "allege with particularity the who, what, when, where, and how of the fraud."  *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 10 (1st Cir. 2016) (affirming dismissal).   These same particularity requirements "cover associated claims where the core allegations effectively charge fraud."  *N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009).

### A.      Plaintiffs Have Failed to Sufficiently Allege *Any* Claims Against Musk

Plaintiffs consumer protection (Counts I-X, XIV-XVI), California statutory (Counts XI-XIII), fraud (Count XVII), and unjust enrichment (Count XVIII) claims are based on allegations: (1) that Musk and Tesla allegedly misled consumers as to EPA range estimates, including by purportedly omitting that temperature could affect range; and (2) that Tesla's EPA-based vehicle dashboard displays "misrepresent[ed]" driving ranges.  *E.g.*, Am. Compl. ¶ 151.  Plaintiffs fail to plausibly plead a claim upon which relief could be granted because they lack a non-preempted basis for asserting the purported falsity of *any* of Musk's own statements; they insufficiently plead Musk's involvement with respect to *any* of Tesla's alleged actions; and they fail to allege causation or reliance concerning in-vehicle displays or *any* allegedly missing references to "EPA Est." Finally, the Court should dismiss Plaintiffs' unjust enrichment claim because Plaintiffs have an adequate remedy at law.

### 1.      Plaintiffs' Allegations Concerning Musk's Statements Fail to Plausibly State Any Claim

"Rule 9(b) requires a complaint to 'specify the statements that the plaintiff contends were fraudulent' and 'explain why the statements were fraudulent.'"  *Presti v. Toyota Motor Sales U.S.A*, 2018 WL 792035, at *1 (D. Mass. Feb. 8, 2018) (citation omitted).  Plaintiffs' terse and

conclusory allegations of "falsity" are insufficient to state a claim under Rule 9 or otherwise.

*__First__*, to the extent that Plaintiffs challenge statements that identify an EPA-approved estimate as not providing an "actual" or "true" range, and which provide no other actionable information as to what that "true" range should take into account, Am. Compl. ¶¶49-50, 52-53, 55, 57-59, Plaintiffs' challenges are preempted for the reasons explained in Section I *supra*.

Plaintiffs' further efforts to identify actionable misrepresentations fail.  Plaintiffs take issue with Musk posting on X a link to Consumer Reports article which he characterized as reporting, "Model 3 achieves 350 mile actual range vs 310 EPA sticker in Consumer Reports testing."  *Id.* ¶¶ 49-50.  Plaintiffs do not allege how this statement, which is an accurate summary of the article and a third party's findings, is false.  Indeed, the article states:  "our Model 3, running in the Daily driving setting, matched the 310-mile range reported by the EPA.  In the Trip driving setting, our Model 3 achieved 350 miles."  *Id.* ¶ 50 n.21.  Plaintiffs also reference a March 2, 2022 post about the Tesla Model S, in which Musk referred to Tesla having a "400+ range car," claiming instead that "[n]one of Tesla's cars" have such a range.  Am. Compl. ¶¶ 52-53.  But, per Tesla's webpage for the Model S as of March 1, 2022, the Model S All-Wheel drive's EPA estimated range was "405 mi Range (EPA est.)."  Wolkoff Decl., Ex. 25.  Plaintiffs also claim that Musk "lied about the range of Tesla's Model S in a public corporate earnings call" in 2020 "where he reported that 'the real Model S range is 400 miles.'"  Am. Compl. ¶ 57.  The entirety of Musk's statement— rather than Plaintiffs' selective editing—reveals the following:

> . . . the real Model S range is 400 miles, but when we did the last EPA test, unfortunately, ATA left, the car door opened and the keys in the car. So the car -- and they did this overnight. And so, the car actually went into a waiting for driver mode and lost 2% of its range. And as a result, it had a 391 test.

*Id.* ¶ 57 n. 26.  Plaintiffs do not allege that this statement, which is about the EPA's testing procedure, was false (*i.e.*, they do not allege that the EPA performed the test properly).  *See* Am.

Compl. ¶ 57.  It is not.

***Second***, Musk's statements concerning ***future*** ranges that Tesla hoped testing would bear out, *e.g.*, *id.* ¶¶ 51, 54, are non-actionable as a matter of law.  *Hallmark Inst. of Photography, Inc. v. CollegeBound Network, LLC*, 518 F. Supp. 2d 328, 330, 332 (D. Mass. Oct. 29, 2007) (predictions, estimates or judgments related to future performance are non-actionable); *Valley Children's Hospital v. Athenahealth, Inc.*, 2023 WL 6065800 (D. Mass. Sept. 18, 2023) (statements regarding future improvements in performance are non-actionable statements of opinion or puffery).  Nor do Plaintiffs adequately alleged that they were false when stated.

***Third***, to the extent Plaintiffs challenge a statement for purportedly failing to identify an EPA estimated range as such, Am. Compl. ¶ 48, it fails for lack of reliance and/or causation, as explained in Section I.B.1 *supra* and Section II.A.3 *infra*.

### 2.     Plaintiffs' Allegations of Musk's Involvement with Tesla's Website and Range Displays Are Insufficient to Plausibly State Any Claim

As Plaintiffs themselves recognize, Musk cannot be held personally liable for Tesla's alleged actions—its website, social media posts, or vehicle displays—that he did not participate in.  Am. Compl. ¶ 3; *Doane v. Benefytt Techs., Inc.*, 2023 WL 2465628, at *14 (D. Mass. Mar. 10, 2023) ("imposing liability on individual corporate officers requires either ***knowledge of unlawful acts or actual participation*** in acts made unlawful by chapter 93A") (emphasis added and citations omitted).  Plaintiffs fail to plausibly allege Musk's participation.

Plaintiffs cannot overcome this requirement with naked, conclusory assertions that Musk purportedly "directed" Tesla.  Mere "labels and conclusions," *Twombly*, 550 U.S. at 555, and "bald assertions," *In re Citigroup, Inc.*, 535 F.3d at 52, are not sufficient.  Plaintiffs must plead "enough factual matter" to make their conclusion plausible.  *Twombly*, 550 U.S. at 556.  This pleading requirement is ***heightened*** because Plaintiffs allege that Tesla's advertisements and supposed

17

dashboard display "manipulation" were fraudulent, activating Rule 9(b)'s pleading requirements for nearly all their claims. Plaintiffs must plead—beyond their conclusory statement that Musk purportedly directed Tesla—***particularized*** facts to support Musk's involvement with ***specific*** actions, detailing "with particularity the who, what, when, where, and how." *D'Agostino*, 845 F.3d at 10. They have failed to do so.

***First***, many of Plaintiffs' allegations about advertised driving ranges are based on the ranges on ***Tesla's*** website or in a single social media post. *E.g.*, Am. Compl. ¶¶ 63-68. Plaintiffs assert, without support, that "Musk directed Tesla to prominently display these inflated ranges on the website." *See, e.g., id.* ¶¶ 62, 73-77. Plaintiffs also suggest, again without support, that the fact that Musk made statements about vehicle ranges that were supposedly inaccurate, somehow confirming that he "directed Tesla" to do this." *Id.* ¶¶ 62. But Plaintiffs nowhere offer any facts sufficient to support that Musk directed the content of Tesla's challenged website pages and post, much less with the specificity required. Plaintiffs' claims sound in fraud, yet they fail to allege how, where, and when Musk directed Tesla to make statements on its webpage or X account, let alone that he directed granular details, such as when and whether Tesla's webpage expressly stated "EPA" next to "Est.," *id.* ¶¶ 63-65, 67, or whether at some point in time Tesla's website did not display EPA next to "Est." on a handful of discrete landing pages associated with certain customer wheel options. *Id.* ¶¶ 66.

***Second***, Plaintiffs' claims that Tesla's vehicle displays "misrepresented driving ranges," *id.* ¶ 10, because they allege, without support, that "***Tesla programmers*** rigged the cars' range-estimating software." *Id.* ¶ 106 (emphasis added). This makes no sense, given that Telsa discloses to customers that vehicle range displays are just an "estimate" reflecting EPA data, not "personal

driving patterns," and that "actual range depends on many factors."[16] But even putting that fundamental flaw aside, Plaintiffs offer no facts to establish that Musk directed any such alleged conduct regarding displayed driving ranges. Plaintiffs' unsupported, conclusory assertions that Musk directed Tesla in general, Am. Compl. ¶¶ 10, 69, 82, 84, 86, fail to state a plausible claim under *Iqbal*, *Twombly*, and Rule 9(b).

At most, Plaintiffs merely cite an article (and other tag along articles citing thereto), in which reporters characterized an *unnamed* source's *view* that Musk wanted "optimistic range projections" for Tesla vehicles. *Id*. ¶ 10. A general desire—based on an unknown source's speculation—is not the same as a specific action. And Plaintiffs do not plead any detail concerning when, where, or how Musk's purported preference for optimistic projections resulted in him directing Tesla engineers to somehow manipulate an algorithm based on the approved EPA range. Such threadbare, untethered allegations do not plead a plausible claim, and certainly do not meet the heightened pleading standard required here. *Id.* ¶¶ 78-87.

### 3.   Plaintiffs' Allegations About Specific Statements and Range Displays Do Not Support Reliance or Causation

Plaintiffs' allegations concerning statements that were not about the Tesla models they purchased and the in-vehicle displays are insufficient to plausibly state claims for relief. They do not support reliance and/or causation—necessary elements for Plaintiffs' claims to survive.[17]

---

[16]   Wolkoff Decl., Ex. 13; *see also id.*, Exs. 7-12, 14-22 (Tesla range tips pages and owner's manuals explaining same).

[17]   For example, Plaintiffs plead fraud (Count XVII), which requires reliance. Restatement (Second) of Torts § 537 (1977) (requiring that a plaintiff "relie[d] on the misrepresentation in acting or refraining from action" and that the reliance was "justifiable"). Likewise, reliance is an element of Plaintiffs' California statutory claims (Count XI-XIII), which also sound in fraud. *See Fisher v. Monster Beverage Corp.*, 2013 WL 4804385, at *11 (C.D. Cal. July 9, 2013) ("When claims under the UCL, FAL, or CLRA sound in fraud, 'plaintiffs are required to prove actual reliance on the allegedly deceptive or misleading statements, and that the misrepresentation was an immediate cause of the injury-producing conduct.'" (citation omitted)). And Plaintiffs' fraud and consumer protection claims have causation requirements. Restatement (Second) of Torts § 546 (1977).

Plaintiffs center their claims on their decision to purchase their specific Tesla vehicles.  As discussed in Section I.B. *supra*, they failed to identify any alleged statements that corresponded to their specific purchases.  And, for Plaintiff Chenette's 2019 purchase, there is no allegation that he even saw the 2019 Tesla post on X, let alone relied on it.  *See* Am. Compl. ¶ 68.  Further, Plaintiffs nowhere allege that they relied on the in-vehicle displays—which they indisputably did not see until ***after*** they received their vehicles—to make their purchases.  *See* Am. Compl. ¶ 10 (consumers saw the range displays after they "turned on their cars").  They could not have relied on them to make their purchases, nor did their ***post***-purchase encounters with these displays cause their purchases.  *See Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 13 (1st Cir. 2017) (affirming dismissal of 93A claim when plaintiff failed to allege causation because she did not see price tag containing alleged misrepresentations until *after* allegedly injury).[18]

### 4.    Plaintiffs Have an Adequate Remedy at Law

"[A] party with an adequate remedy at law cannot claim unjust enrichment."  *Shaulis.*, 865 F.3d at 16.  Plaintiffs, who seek damages, Am. Compl. at 90, cannot bring an unjust enrichment claim for themselves or others because they have adequate legal remedies: their consumer protection, California statutory, and fraud claims.  That these claims are not viable because Plaintiffs failed to plead the legal requirements "is beside the point," and their unjust enrichment claim should be dismissed.  *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 84 (1st Cir. 2020).

### <u>CONCLUSION</u>

The Court should dismiss with prejudice the entire Amended Complaint against Musk under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

---

[18]   *See also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011) (requiring injury resulting from UCL, FAL, or CLRA violation); *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1200 (N.D. Cal. 2014) (same for UCL and CLRA).

Respectfully submitted,

Date: September 30, 2024

/s/ *Aliki Sofis*
_____

Aliki Sofis (BBO# 675777)
Eric D. Wolkoff (BBO# 679566)
Matthew Mazzotta (BBO# 679230)
Marla L. Blum (BBO# 708966)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
alikisofis@quinnemanuel.com
ericwolkoff@quinnemanuel.com
matthewmazzotta@quinnemanuel.com
marlablum@quinnemanuel.com

/s/ *Alex Spiro*
_____

Alex Spiro (admitted *pro hac vice*)
Jesse Bernstein (admitted *pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
alexspiro@quinnemanuel.com
jessebernstein@quinnemanuel.com

*Counsel for Defendant Elon R. Musk*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of the above document was filed on September 30, 2024, through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  September 30, 2024                 /s/ *Aliki Sofis*
                                           Aliki Sofis